SPARKS *et al. v.* HESS *et al.*

THE lien which the vendor of real property retains, after an absolute conveyance, for the unpaid purchase money, is not a specific and absolute charge upon the property, but a mere equitable right to resort to it upon failure of payment by the vendee.

This equitable right may be enforced in the first instance, and before the vendor has exhausted his legal remedy against the personal estate of the vendee. The Court, after determining the amount of the lien, can, by its decree, either direct a sale of the property for its satisfaction, and execution for any deficiency, or award an execution in the first place, and a sale only in the event of its return unsatisfied, as the justice of the case may require.

Where the contract of sale of real property is unexecuted, the vendor retaining the legal title for security until all the purchase money is paid, the vendor's lien retained is different from the ordinary lien of a vendor after conveyance executed. In the latter case, the vendor has parted with the legal and equitable title, and possesses only a bare right, which is of no operative force or effect until established by the decree of the Court. In the former case, the vendor's position is somewhat similar to that of a party executing a convey-

Sparks *v.* Hess.

ance and taking a mortgage back.  He may sue at law for the balance of his purchase money, or file his bill in equity for the specific performance of the contract, and take an alternative decree, that if the purchaser will not accept a conveyance and pay the purchase money, the premises be sold to raise such money, and that the vendee pay any deficiency remaining after the application of the proceeds arising upon such sale.

In such case of an unexecuted conveyance, the vendor may ask either a decree directing performance, and in case of refusal, a sale of the premises, or a decree barring the right of the vendee to claim a conveyance under the contract.  He may, however, insist upon a sale where performance is refused, and is not bound to take a mere foreclosure of the vendor's right to a deed.

Land will sometimes pass without any specific designation of it as land.  Thus the grant of a messuage, or a messuage with the apurtenances, will pass the dwelling house and adjoining buildings; and also, its curtilage, garden and orchard, together with the close in which the house is built.

The rule is, that everything essential to the beneficial use and enjoyment of the property designated is, in the absence of language indicating a different intention on the part of the grantor, to be considered as passing to the grantee.

So the sale of a "bridge" across a certain stream, "together with the toll-house, stables and out-houses of every description," and "all the privileges and appurtenances appertaining, or in any wise belonging to said bridge," passes the land upon which the bridge rested, and the other buildings were erected.

Cases on this subject stated.

The doctrine that land may often pass by conveyance as essential to the enjoyment of, or as parcel of buildings, etc., erected thereon, is consistent with the doctrine that the ownership of the land may be in one person, and the ownership of the structures thereon in another—as in these latter cases the buildings are erected by permission of the owner of the land for the use of the builder, and generally under mutual expectation by the parties of their removal, or of compensation being made for them to the builder, or of the latter ultimately acquiring title to the land.

Where a party purchases a bridge, toll-houses, stables and out-houses appurtenant, with the right and privilege of his vendor in and to a "dug road" made on each side of the bridge, neither the purchaser, nor those claiming under him with notice, can object to a decree enforcing the vendor's lien against the premises, that the "dug road" is public land, and that therefore nothing would pass under a sale upon the decree.

APPEAL from the Fourteenth District.

In November, 1854, plaintiffs entered into a written contract with defendant Hess, the essential terms of which are, that plaintiffs "do hereby agree to sell and convey unto the said —— Hess a certain bridge located, situated and lying on the south fork of the Yuba river, etc., known as Sparks' bridge, at, etc., across the south fork of said river, together with the toll-house, stables and out-houses of every

description; and also, the right and privilege of the said —— Sparks in and to the dug road there made on each side of said bridge, together with all the privileges and appurtenances appertaining, and in any wise belonging to said bridge." The consideration to be paid by Hess was $8,000, payable, $3,000 in ten days from date; $1,000 December 1st, 1854; $2,400, or thereabouts, by taking up a mortgage note held by a third party against plaintiffs; the balance in six months from date of contract, with interest at three per cent. per month. The plaintiffs were "to retain possession of said bridge until the payment of said first $3,000, to be paid in ten days from date, and on the payment of the same by the said Thomas P. Hess, the said M. & H. B. Sparks (plaintiffs) agree to deliver possession of said bridge to said Hess, with all the privileges thereunto belonging; and on the payment of said several sums of money when the same become due, the said M. & H. B. Sparks (plaintiffs) agree to convey by deed to the said Hess the title to said bridge, with general covenants of title, and that the same is free and clear from all incumbrances." Signed by plaintiffs and defendant Hess.

Hess paid the sums mentioned in the contract, took up the note and mortgage amounting to $2,900, and received possession of the premises, leaving still due plaintiffs $1,100. Plaintiffs tendered to Hess a deed and demanded payment. Defendant Wood took possession of the property soon after the contract, received the tolls, and improved the road, remaining in possession until the bridge was carried away by water in the latter part of 1855. Hess was probably acting for Wood. In January, 1856, Wood and others became incorporated under the name of the Virginia Turnpike Co. This company then constructed a new bridge on the site of the old one, except that one end was moved about the width thereof up stream—portions of the old abutment being used. They also constructed a wagon road leading from the bridge up the hills, in doing which they used portions of the road constructed by plaintiffs, but the greater proportion of this road was on different ground near the old road of plaintiffs. Wood had notice of plaintiffs' demand for the $1,100 purchase money, as did said company, of which he is and ever has been an officer. There was no testimony as to whether this company purchased from Wood.

Plaintiffs filed their complaint against Hess & Wood, setting up the contract, averring full performance on their part, with a tender of a deed, etc.; that, by the contract, they retained the title and a vendor's

Sparks *v.* Hess.

lien as security; and that Wood was in possession, claiming some inter-
est under Hess, and had, in fact, paid some of the money on the con-
tract.    Prayer for judgment against Hess for $2,600, the amount of
principal and interest due under the contract; that the vendor's lien
against the premises be enforced; that they be sold and the proceeds
applied to the satisfaction of the judgment, execution to be allowed for
any balance, and that Hess & Wood be barred and foreclosed, etc.

Subsequently, the Virginia Turnpike Co. was made party defendant
by order of Court.    This company demurred to the complaint on the
grounds, that the property described therein was not the subject of the
vendor's lien claimed; that the contract does not create any such lien;
and that no cause of action is shown against the company.    The
demurrer was overruled, and the company answered, setting up that
the bridge was situated on public land, and that plaintiffs never claimed,
or sold, or contracted to sell to Hess, any right, title, interest or posses-
sion in or to the land on which the bridge was situated, or any land in
the vicinity; that the dug road named in the contract was, at the date
thereof, a public county road, on public land, and not subject to private
sale; that the bridge and stable named in the contract were swept
away by water; and that this company constructed a new bridge and
a road near the site of the former; was the owner and in possession
thereof in its own right, and not by purchase from, or in privity with,
either of the co-defendants, and denies that the company ever had any
control, possession, or ownership of the dug road, toll-house, stables
or out-houses named in the contract, or that plaintiffs have any lien on
the bridge or road owned and constructed by this defendant.

Wood also demurred on various grounds, the substance of which is,
that complaint does not state facts sufficient to constitute a cause of
action; that, under the contract, plaintiffs never sold to Hess the prop-
erty named, but retained the title in themselves, and can recover pos-
session by an action at law; that the property alleged to have been
sold was not in existence at the commencement of this suit; that it
does not appear that Wood had notice of the so-called vendor's lien,
nor what estate in the premises plaintiffs owned or sold to Hess, nor
that they ever owned or sold the land on which the bridge or other
structures were erected, or through which the " dug roads " were made;
that the dug road could not be sold as private property, and that nothing
was sold to Hess, except the structures alone; and for any injuries suf-
fered, plaintiffs had a clear legal remedy.    Demurrer overruled; Wood

answered, setting up the same defense as the company for the most part; admitting that he claimed an interest in the old bridge, but denied any interest in or possession of the dug road, or other structures.

The decree below gave plaintiffs personal judgment against Hess as claimed; directed that the property be sold, and the proceeds applied to said judgment, any balance to be deposited in Court; that "the vendor's lien of plaintiffs on the premises described in the complaint be and the same is hereby foreclosed;" that all of the defendants and persons claiming through them be barred and foreclosed of all right, title, interest, or equity of redemption, except the redemption by statute in and to the premises, which are described to be the bridge, the outhouses connected with the same, the land on which they stand, the dug road running from the bridge up the hills on each side of the river, together with the privileges and appurtenances thereunto belonging. Defendants appeal.

*McConnell & Niles*, for Appellants.

I.    Under the contract, the legal title to the premises remained in plaintiffs, Hess having a mere equity, upon which a vendor's lien could not be engrafted. Plaintiffs having the legal title, could not at the same time have a vendor's lien, as a mere equity and the legal title cannot coëxist in the same person. Plaintiffs' remedy at law against Hess was clear. (Adams on Ejectment, sec. 107 ; *Goodtitle* v. *Herbert*, 4 Term, 680 ; *Doe* v. *Warner*, 8 East. 165 ; *Doe* v. *Jackson*, 1 Barn. & Cress. 448 ; *Jackson* v. *Rowan*, 9 Johns. 380 ; *Doe* v. *McShaw*, 1 Green's 95 ; *Venable* v. *McDonald*, 4 Dana, 337 ; *Doe* v. *Webster*, 10 Yerg. 513 ; *Jackson* v. *Miller*, 7 Cow. 747.)

II.    Plaintiffs should have exhausted their remedy against Hess, before the vendor's lien could be enforced. (1 Hilliard on Mort. 626–7 ; *Pratt* v. *Van Wyck's Ex'rs*. 6 Gill. & John. 498 ; *Eyler* v. *Crabbes*, 2 Md. 137.) And further, such lien can only be enforced in case of deficiency of the personal estate of the vendee. (*Bottorf* v. *Conner*, 1 Blackf. 287.)

Again, even if this rule relates to the remedy, rather than to the right to foreclose, then the complaint and decree should be in the alternative—making the foreclosure of the lien depend on the failure of the personal remedy to give redress. This was not done here ; the lien was treated as a mortgage, and the usual order of sale of the premises in the first instance made, with execution for the balance.

Whether appellants claim with or without notice of the vendor's lien, their equities are of a higher nature than those of Hess; and they have a right to demand that his personal estate shall first be subjected.

III.   No land was sold by the contract, and hence there can be no vendor's lien.   The word "bridge" imports nothing but the structure itself; so with the word "house."   The word "messuage" is a word of art, and does include the house and land occupied by and adjoining it. (Coke on Litt. 4 (*a*) 4 (*b*) ; 1 Hilliard on Real Prop. 54, *passim ; Pierce* v. *Goddard,* 22 Pick. 559 ; *Ashman* v. *Williams,* 8 Id. 402 ; *Binsell* v. *Richards,* 2 Fairfield, 371 ; 3 Id. 162 ; Id. 243 ; *Wickliffe* v. *Clay,* 1 Dana, 591 ; *Smith* v. *Benson,* 1 Hill, 176.)

It may be a question whether, by a grant of a building, it passes as real property or as a chattel.   It has been held that a man may have a freehold in an upper chamber of a house, in a pew of a church or in growing trees.   (1 Hilliard Real Prop. 52, 56, 57.)

It is a matter of no importance to us in what light this question may be viewed; for whether the bridge be realty or personalty, inasmuch as it no longer exists, no lien upon it can be sustained.   As regards the toll-road, no lien can be said to exist upon it.

*T. B. McFarland,* for Respondents.

I.   The main position taken by counsel for appellants is, that plaintiffs should have exhausted all their legal and personal remedies against the defendant, Hess, before seeking to enforce their vendor's lien. This doctrine has been laid down in a few cases, but it is not, by any means, the established rule, even where the vendor has made an absolute conveyance of the property.   The rule is not mentioned in Story's Equity Jurisprudence, or in Sugden on Vendors, or in any of the text books ; and the doctrine has only been held, at best, in those States in which courts of law and equity are separate and distinct.   (*Galloway* v. *Hamiliton,* 1 Dana, 576.)

II.   But the case at bar is different from ordinary cases of vendor's lien, as known to equity ; and different from the cases cited by counsel for appellants.   In each of those cases the vendor had executed an absolute conveyance of the land ; all legal right and title had passed out of him, and he had no lien or hold on the land of any nature known to the law.   In the case at bar, however, there was no conveyance of the property, but simply an agreement to convey upon the payment of

the purchase money.   The lien which the respondents have upon the property is, really, something more than a vendor's lien, as known to equity alone.   They hold the legal title as security, and are in the same position as though they had executed a deed, and taken a mortgage. They may proceed, in the first instance, to enforce their lien, without proceeding against Hess personally, or alleging his insolvency.   This doctrine has been established by a multitude of authorities, a few only of which are cited.   The cases of *Haley* v. *Burnett* and *Chapman* v. *Chum*, below referred to, are exactly similar to the case at bar.   (*Haley* v. *Burnett*, 5 Porter's, 452 ; *Chapman* v *Chum*, 5 Ala. 397 ; *Gouldin* v. *Buckelew*, 4 Cal. 107 ; *Ellis* v. *Jeans*, 7 Id. 409 ; *Walker* v. *Sedgwick* 8 Id. 398.)

III.   It is also objected that the property, on which the lien is sought to be enforced, is not real property.   A bridge has certainly all the qualities of permanency, fixedness and immovability which characterize real property.   Moreover, the testimony shows that the respondents, in 1850, made their location and constructed their bridge, roads, toll-houses, &c., &c., and occupied and held the same from that time until the date of the sale.   By these acts, they appropriated so much of the public land as was necessary for building their bridge and road, and for carrying on their business ; and such land belonged absolutely to them and their heirs and assigns, as against all persons, except the United States.   Their interest was as much real estate as any ownership of land in the public domain can be.   And the agreement to convey the bridge, road, toll-house, &c., with the appurtenances, carried with it the land on which said improvements stood, and the land necessarily occupied in using and enjoying the same.   The deed of "a house" carries the land on which it stands, and "a mill" the water right appurtenant to it.   (*McDonald* v. *Bear River Co.* 13 Cal.)

IV.   The position that the present bridge and road are not the same as those sold, cannot be seriously taken.   The repairing of the bridge, by building a new frame, and the changes made in the road, were improvements, and did not change the nature and identity of the property.

FIELD, C. J. delivered the opinion of the Court—BALDWIN, J. and COPE, J. concurring.

The doctrine that the vendor of real property, after an absolute conveyance, retains a lien for the unpaid purchase-money, is well established in England, and prevails, with some exceptions, in the several

States of the Union.   This lien is not, however, a specific and absolute charge upon the property, but a mere equitable right to resort to it upon failure of payment by the vendee.   It is a right founded upon the natural justice of allowing the vendor to subject the property, with which he has parted, to the satisfaction of the debt which constitutes the consideration of the transfer.   As it is a mere equitable right, some authorities hold that it cannot be asserted until the vendor has exhausted his legal remedy against the personal estate of the vendee.   (*Pratt* v. *Van Wyck's Ex'rs.* 6 Gill. and John. 495 ; *Bottorf* v. *Conner*, 1 Black. 287 ; *Russell* v. *Todd*, 7 Id. 239.)   On the other hand, authorities of equal weight treat the lien as in the nature of a mortgage, and hold that it can be enforced without previous recourse to proceedings at law. (*Bradley* v. *Bosley*, 1 Barb. Ch. 152 ; *Galloway* v. *Hamilton's Heirs*, 1 Dana, 576 ; *Richardson et al.* v. *Baker*, 5 J. J. Marsh, 323 ; *High and Wife* v. *Botte*, 10 Yer. 186.)   We can see no objections to the suit in equity in the first instance, and many reasons for it.   It will furnish a more simple and efficacious remedy, and, in many cases, the only adequate protection against the absolute loss of the right to enforce the lien.   Pending the action at law, the property might be transferred to a *bona fide* purchaser without notice, and thus be placed beyond the reach of the vendor.   By the suit in equity, and the filing of notice of *lis pendens*, information of his claim may be imparted to purchasers, and protection against transfers *pendente lite* be thus secured.   The Court, after determining the amount of the lien, can by its decree either direct a sale of the property in the first instance for its satisfaction, and execution for any deficiency, or award an execution in the first place, and a sale only in the event of its return unsatisfied, as the justice of the case and the equities developed in its progress may require.   So much we have thought proper to say out of consideration for the argument of the counsel of the appellants.   We do not think, however, that the question, principally and learnedly discussed by the counsel, has any application to the case at bar.   This is not a suit to enforce a vendor's lien after conveyance executed, but to enforce such lien where the contract of sale remains unexecuted,   The plaintiffs sold the property, described in the complaint, to the defendant, Hess, for the consideration of eight thousand dollars, to be paid in different instalments, within six months ; the possession to be delivered upon the payment of the first instalment ; and the conveyance to be executed upon the payment of the entire consideration.   The first instalment

was paid, and the possession was delivered.   A portion of the balance remaining unpaid, the plaintiffs tendered the conveyance and demanded payment.   Not obtaining the payment, they instituted the present suit. Between the lien they thus assert, and the ordinary lien of a vendor after conveyance executed, there is a marked difference.   In the latter case, the vendor has parted with the legal and equitable title, and possesses only a bare right, which is of no operative force or effect until established by the decree of the Court.

In the present case, the vendors have retained the legal title, and evidently as security for the purchase money.   Their position is, in some respects, similar to what it would have been had they executed a conveyance to the vendee and taken from him a mortgage upon the property.   A mortgage is in form a conveyance of the legal title, though intended only as security for the debt.   Here the title is retained by the vendors for a similar purpose of security.   A mortgagee may pursue his remedy at law, or proceed in equity for a sale of. the premises.   A vendor retaining the title may in like manner sue at law for the balance of the purchase money, or file his bill in equity for the specific performance of the contract, and take an alternative decree that if the purchaser will not accept the conveyance and pay the purchase money, the premises be sold to raise such money, and that the vendee pay any deficiency remaining after the application of the proceeds arising upon such sale.   "The vendor," says Chancellor Walworth, in *Clark* v. *Hall,* (7 Paige, 385) "has a lien upon the premises sold for the unpaid purchase money ; and where there is a decree for a specific performance, if the vendee will not accept the conveyance and pay the purchase money, the premises may be sold for the purpose of raising such purchase money; and if the amount produced is not sufficient to pay what is due, with the costs of sale, the vendee may be ordered to pay the balance ; and if there is a surplus, it will be paid to him.   Yet, it is not a matter of course to direct a sale, unless the vendor asks for it, as the Court may make a decree, as in the case of a strict foreclosure, where the case is a proper one for such a decree, that if the vendee does not pay the purchase money within such time as may be limited for that purpose by the Court, he shall be barred and foreclosed of his right to claim a specific performance afterward."   The vendor is at liberty to ask either a decree directing performance, and in case of refusal, a sale of the premises, or a decree barring the right of the vendee to claim a conveyance under the contract.   He may, however,

insist upon the sale, where the performance is refused, and is not bound to take a mere foreclosure of the vendor's right to a deed. In the case at bar, the plaintiffs tendered their deed under the contract, and as its acceptance was declined, they pray a sale of the premises, and such sale was decreed. The form of the complaint was more that of an ordinary complaint in a mortgage case than a complaint for specific performance, and the decree is not, as it should be, in the alternative. We do not, however, deem it necessary to direct a modification of the decree, as the defendants can still, at any time, arrest a sale and take a conveyance, upon payment of the amount adjudged due of the purchase money, interest thereon and the costs of this suit. ( *Green* v. *Fowler et al.* 11 Gill and Johns. 104; *Haley et al.* v. *Bennett,* 5 Porter, 469; *Graham* v. *Mc Campbell,* 1 Meigs' Tenn. Rep. 56.)

The position, that as no mention is made of any land in the contract of sale, nothing was embraced by the contract which could support or feed a vendor's lien, is not tenable. The sale was of the bridge, toll-house, stables and out-houses of every description, and of all the privileges and appurtenances appertaining or in anywise belonging to the bridge. It is evident that the parties, on the one hand, intended to pass, and on the other hand, expected to receive the land upon which the bridge rested and the other buildings were erected. The plaintiffs had constructed the bridge and other buildings as early as 1850, and been in their possession and use until the sale; and upon the payment of the first installment of the purchase money, they delivered the possession to the vendee, with the land which these covered. From this delivery, it is manifest that the parties looked to the use of the property in the position where it was then situated, and did not indulge any expectation of its removal. But aside from this consideration, we are of opinion that the land is embraced in the general designation of the property, and will pass by its conveyance. It is usual, it is true, to convey land, or to contract to sell land by specific designation and description; but this is not essential in all cases. Land will often pass by other terms. Thus, a grant of a messuage, or a messuage with the appurtenances, will pass the dwelling house and adjoining buildings; and also its curtilage, garden and orchard, together with the close in which the house is built. "So much, also," says Sheppard, "may pass by the grant of a house; so that the quantity of an acre of ground, or, thereabouts, in orchard, garden and outlet, may pass by either of these names." (Shep. Touch. 94; 4 Green. Cruise, tit. 32, ch. 21, s. 40;

*Smith et al.* v. *Martin,* 2 Sand. 401, note; *Carden* v. *Tuck,* Cro. Eliz. 89.)    The true doctrine we conceive to be this : that everything essential to the beneficial use and enjoyment of the property designated is, in the absence of language indicating a different intention on the part of the grantor, to be considered as passing to the grantee; or, as observed by Mr. Justice Story, in *Whitney* v. *Olney et al.,* (3 Mason, 280) " the good sense of the doctrine on this subject is, that under the grant of a thing, whatever is parcel of it, or of the essence of it, or necessary to its beneficial use and enjoyment, or in common intendment is included in it, passes to the grantee." In that case, Mr. Story held that by the devise of a mill and its appurtenances—not the buildings merely, but all the land under the mill and necessary for the use of it, and commonly used with it, passed to the devisees.· In *Gilson* v. *Brockway,* (8 N. H. 465) a conveyance with this description : " A certain tenement, being one-half of a corn mill, situated in Washington, in lot number one, with all the privileges and appurtenances," was held to pass not only the mill, but the land on which it was situated, together with such portion of the water privilege as was essential to the use of the mill.    " Independent of the word tenement," said the Court, " there is sufficient in this description to convey the land connected with the mill.    The term messuage, house and mill, will often include land, if not necessarily so, unless there is something in the conveyance to rebut such a presumption."

In *Wise* v. *Wheeler,* (6 Iredell, 196) a deed of trust from one Wheeler, conveying " the storehouse wherein the said Wheeler had a storeroom, occupied by him as a post office, with the out-house and office adjoining," was held to pass the lot upon which the houses were situated, there being nothing in the deed to control the description, and exclude the lot.    In *Allen* v. *Scott, et al.,* (21 Pick, 25) land was conveyed by a mortgage deed, with all the buildings standing thereon, except *the brick factory,* and it was argued that the exception extended only to the factory building, and not to the land under it, or the water power appurtenant thereto; but the Court held that the argument could not be maintained, and that the land and water privilege were reserved with the factory, and did not pass under the deed—observing that the exception was to be construed according to the meaning of the parties, if not inconsistent with the rules of law, and that it could not be supposed that the mortgagor reserved his portion of the building for the purpose of removing it, as that, if it could be done, would be nearly a

total destruction of the property, and that he could hold and enjoy nothing of value under the exception, unless he could occupy the building as it stood previous to the execution of the mortgage. (See also *Doane* v. *Broadstreet Association*, 6 Mass. 333; *Blake et al* v. *Clark*, 6 Greenl. 436; *Forbush* v. *Lombard*, 13 Met. 109; *Swartz* v. *Swartz*, 4 Barr, 353.)

Other authorities to the same effect might be cited, but the above are sufficient to show the correctness of the doctrine we have stated, that everything essential to the enjoyment of property granted is to be considered, in the absence of language indicating a different intention on the part of the grantor, as passing with it, either as parcel thereof, or appurtenant thereto. Nor is this doctrine inconsistent with any of the authorities cited by the appellants, as to the distinct ownership which may exist with reference to the land and the structures thereon. It frequently happens that the ownership of the land may reside in one person, and the ownership of the structures in another. In all cases of this kind, the buildings are erected by permission of the owner of the land, for the use of the builder, and generally under a mutual expectation by the parties of its removal, or of compensation being made for it to the builder, or of the latter ultimately acquiring the title to the land.

Thus in *Russell* v. *Richards et al.*, (1 Fairfield, 429) the mill was erected by the permission of the owner of the mill privilege, after a parol contract had been entered into with the builders for a sale to them of the privilege. In *Wells et al.* v. *Bannister et al.*, (4 Mass. 513) the house was erected by the son for his own convenience and accommodation, on the land of his father, and by the permission of the father, and under an expectation that the land would be devised by his father to him. In *Ashmun et al.* v. *Williams*, ( 8 Pick. 402) the building was erected on land, the fee of which was in the town of Northampton, under a contract with the builder that the town should occupy part of it, at a specified rent, and have the right to purchase it at an appraised value. In *Smith et al.* v. *Benson et al.*, (1 Hill, 176) the house was erected on rented property, with an understanding that the builder was to have from three to six months to remove the same.

We do not perceive the force of the objection to the decree in relation to the road dug on each side of the bridge. The privilege of this road is designated in the contract as sold to the defendant Hess, and it would probably have been included, without specific designation, among the appurtenances of the bridge. It does not appear that the road was

other than a private one, constructed by the plaintiffs over their land. If the public have any interest in it, nothing will pass under the sale which can destroy or impair that interest. The objection does not lie in the mouth of the defendant, who contracted to purchase its privilege from the plaintiffs, nor with those who claim under them with notice.

Judgment affirmed.