[No. 9544.   In Bank. — March 30, 1886.]

W. W. CROSS, ADMINISTRATOR ETC. OF T. W. SIGOUR-
NEY, DECEASED, APPELLANT, *v.* JAMES KITTS ET
AL., RESPONDENTS.

EASEMENT — TRANSFER OF — CONVEYANCE OF DOMINANT TENEMENT. — A
    transfer of real property passes all easements attached thereto, and
    creates in favor of such property an easement to use other real property
    of the vendor in the same manner and to the same extent as the latter
    was obviously and permanently used by the vendor for the benefit of the
    former at the time the transfer was agreed upon or completed.

ID. — PERCOLATING WATERS — RIGHTS IN HOW ACQUIRED. — Percolating
    waters collected or gathered in a stream running in a defined channel
    constitute property, or incidents of property, which may be acquired by
    grant, express or implied, or by appropriation; and when rights in such
    percolating waters are acquired, the owner cannot be divested thereof by
    the wrongful acts of another.

APPEAL from a judgment of the Superior Court of Nevada County.

The facts are stated in the opinion of the court.

*H. V. Reardan*, for Appellant.

*C. W. Kitts*, for Respondent Kitts.

McKEE, J.—This is an appeal from a judgment in favor of the defendant in an action brought by the plaintiff to quiet title to a water right described in the complaint, and to enjoin the defendant from asserting any title to the water, adverse to the plaintiff.

The judgment was entered upon a decision given in writing, and filed under sections 632 and 633, Code of Civil Procedure. On this appeal from the judgment the plaintiff in the action contends that he was entitled to judgment upon the decision, and that is the question.

According to the decision, J. C. Gillespie was formerly the owner and in possession of a gravel claim, known as the "Gillespie claim," which adjoined a gravel claim, known as the "Shanghai claim," situated at the head of Gold Flat, in Nevada County. The Gillespie claim was excavated by a tunnel two hundred feet long, known as the McCormick tunnel, the ground at the entrance of which had caved so that "no water, perceptible upon the surface, issued out of it"; and Gillespie, at or near to its entrance, made an open cut, from the front, bottom, and sides of which water percolated and collected "in such quantity as to form a running and defined stream of about two inches, miner's measure." This water came from near the inner end of the tunnel, on or near the dividing line between the Gillespie and the Shanghai claims, and "where the bed-rock pitched down into a low channel or basin."

That was the condition of the Gillespie claim in the year 1864, when Gillespie, being in possession as owner,

sold, and by deed transferred, to one A. D. Rich, the right to the water issuing from the tunnel in the claim, by the following description:—

"That certain spring of water now issuing from the head of an open cut run by said Gillespie in the diggings of said Gillespie. Said diggings being at the head of Gold Flat in Nevada township, Nevada County, state of California, and adjoining the Shanghai diggings on the west, and all waters now issuing or to issue from said spring, with the right and privilege to run another and deeper cut, or a tunnel, or cut and tunnel to said spring, over and through the said diggings of Gillespie, and a right of way and easement to construct said cut or tunnel, and divert, manage, and control said water, and make repairs, lay pipes and boxes, and convey and direct said water. The point from which said cut or tunnel is to be run to be the point on Gillespie's diggings where the northwest corner of the said Shanghai diggings touches the diggings of said Gillespie."

When A. D. Rich acquired the water right described in his deed, he and J. C. Rich were tenants in common of the Shanghai claim, adjoining the Gillespie claim, and of a parcel of property near to the two claims known as the Half-mile House. There were two springs of water upon the Shanghai claim, and the proprietors of the Half-mile House brought the water from those springs and from the spring issuing from the head of the open cut at the entrance of the tunnel in the Gillespie claim, by means of ditches, boxes, and pipes down to their property for domestic use and irrigation; and in that manner they continued to use and enjoy the water from those sources until the year 1872, when they sold and conveyed the Half-mile House property to one G. M. Smith. The finding of the court is:—

"That said Half-mile House was by J. C. and A. D. Rich sold to G. W. Smith in 1872, and in the deed conveying the same several water rights were described.

and among them the following: 'Also that certain other water right, situate in said township and county, consisting of a spring and the waters arising therefrom, situate and being upon the Shanghai mining claim, formerly owned by Prior and Madison, on Gold Flat, in the ranch of Gillespie, together with all flumes and ditches used to divert and convey the waters of said spring to the lot and premises herein first conveyed.'

"And all the water rights mentioned in the respective deeds from Rich and Rich to Smith . . . . were likewise used at and appurtenant to said Half-mile House property, at the time of the conveyance thereof to Smith."

As administrator of the estate of T. W. Sigourney, deceased, the plaintiff in the action derives title to the Half-mile House property by mesne conveyances from Smith and A. D. and J. C. Rich. Sigourney died in 1880, seised and possessed of the property. From the year 1873, the date of his acquisition of title, until the time of his death, he occupied the property, and used and enjoyed the water appurtenant to it, to the same extent that his grantors, immediate and remote, had used and enjoyed it, except that some changes were made in the use, necessitated by the working of the gravel claims in which the springs were located; but the right of Sigourney to the water from the McCormick tunnel in the Gillespie gravel claim was never questioned in his lifetime. In fact, it was always admitted by the owners and workers of the claim.

But in the year 1881, Kitts, defendant in the action, acquired the title of the Gillespie gravel claim, and in working the claim by the hydraulic process, they mined away a portion of the McCormick tunnel, and stopped the waters from flowing into and through the Sigourney flume to the Half-mile House property, claiming that the water in the tunnel was their property.

The court decided in favor of defendants, holding, as matter of law, "that neither the plaintiff nor the plaintiff's intestate ever had or now has any estate, right, title,

or interest whatever in the said . . . . mining claim, and the said plaintiff does not now have, and did not have at the time of the commencement of this action, any right, title, or interest whatever in any water or water right therein or thereon, or the right to take water flowing therefrom. And that said defendants . . . . are the sole owners of all waters flowing from said mining claim, and are entitled to the use and possession thereof.

"That they have the right to mine and work their said claims, and to divert, appropriate, and use all water that may be found therein that may flow therefrom."

The conclusion that the plaintiff had no right in or to receive the water flowing from the McCormick tunnel is not well drawn from the findings. The right in and the right of receiving the water (Civil Code, sec. 810) passed by the deed of Gillespie in 1864 to A. D. Rich, and all the actual title to the Half-mile House property passed from A. D. and J. C. Rich and their grantees by the mesne conveyances under which Sigourney derived the title. The right to the water from the McCormick tunnel therefore passed as an incident to the Half-mile House property. (Civil Code, sec. 1084; *Sparks* v. *Hess,* 15 Cal. 186; *Cave* v. *Crafts,* 53 Cal. 135.) A transfer of real property, says the code, passes all easements attached thereto, and creates in favor thereof an easement to use other real property of the person whose estate is transferred, in the same manner and to the same extent as such property was obviously and permanently used by the person whose estate is transferred for the benefit thereof, at the time when the transfer was agreed upon or completed. (Civil Code, sec. 1104.)

But the decision that the defendants as owners of the Gillespie gravel claim had the superior right to the water seems to have for its basis the fact found by the court, "that all the water that ever flowed through the McCormick tunnel was percolating water gathered from the ground through which said tunnel was run"; but the court also found as a fact that the water "percolated

and collected in such quantity as to form a running and defined stream of about two inches, miner's measure."

There is no doubt that percolating water existing in the earth is not governed by the same laws that pertain to running streams. Water percolating in the soil belongs to the owner of the freehold. " Each owner," says the Supreme Court of Connecticut, " has an equal and complete right to the use of his land and to the water which is in it. Water combined with the earth, or passing through it, by percolation or filtration or chemical attraction, has no distinctive character of ownership from the earth itself any more than the metallic oxides of which the earth is composed. Water, whether moving or motionless *in the earth,* is not, in the eye of the law, distinct from the earth." (*Roath* v. *Driscoll,* 20 Conn. 540; see also *Hanson* v. *McCue,* 42 Cal. 303; *Ballard* v. *Tomlinson,* 24 Am. Law Reg. 636.)

But where percolating waters collect or are gathered in a stream running in a defined channel, no distinction exists between waters so running under the surface or upon the surface of land. They are such property or incidents to property as may be acquired by grant, express or implied, or by appropriation, and when rights in them are thus acquired, the owner cannot be divested of his rights by the wrongful acts of another. In *Brown* v. *Ashley,* 16 Nev. 317, it was held that rights in water coming from a spring by percolation are acquirable by prior appropriation, and the appropriator cannot be divested of them by a subsequent owner of the soil, and *a fortiori* will that be the case where such rights are derived from the owner of the soil by express grant.

The plaintiff was entitled to judgment upon the findings.

Judgment reversed and cause remanded.

MYRICK, J., SHARPSTEIN, J., and McKINSTRY, J., concurred.

Rehearing denied.