## DOYLE *v.* SAN DIEGO LAND & TOWN Co.

*(Circuit Court, S. D. California. July 6, 1891.)*

1. WATER-RIGHTS—DIVERSION OF WATER.
   A deed by the owners of a stream to a corporation organized for the purpose of diverting water from the stream for the purposes of irrigation, the furnishing water for mining and manufacturing purposes, and for supplying water to cities. conveying the right to the grantee, its successors and assigns, "to divert and appropriate all the waters flowing in" said stream, is a grant of the right to divert the water thereafter flowing in the stream, as against a subsequent purchaser from the grantor of land bordering on the stream.

2. CONVEYANCE BY DE FACTO CORPORATION.
   A conveyance to or by a *de facto* corporation cannot be avoided on the ground of any defect in its organization.

In Equity.
*Deakin & Story,* for complainant.
*J. Wade McDonald* and *Luce, McDonald & Torrance,* for defendant.

ROSS, J. This suit is brought to enjoin the defendant from the erection of a dam on the Sweetwater river in San Diego county, and from thereby diverting the waters of that river from their natural channel; complainant being, as alleged, a lower riparian proprietor, having acquired his tract of land, called the "Old Copeland Place," from one George D. Copeland, and he having acquired it by purchase from Frank A. Kimball, Warren C. Kimball, and Levi W. Kimball, on the 1st day of April, 1873. The answer to the bill, as amended, among other things, alleges that—

"On the 9th day of June, 1869, Frank A. Kimball and Warren C. Kimball were, and for a long time prior thereto had been, the owners in fee of all and singular the bed of said Sweetwater river, and of all the land on each side

thereof, riparian and contiguous thereto, from the point on said Sweetwater river where is now located the dam and reservoir of this defendant, downward, along and upon said Sweetwater river, to the place where said river empties into the bay of San Diego."

The answer also alleges that on the said 9th day of June, 1869, the Kimball Brothers Water Company was a corporation duly organized and existing under and pursuant to the laws of the state of California for the purpose "of diverting by means of dams, flumes, canals, and aqueducts the waters of the Sweetwater river and its tributaries, and other streams in the county of San Diego, from their natural channel, at some suitable point or points, for the purposes of irrigation, the furnishing water for mining and manufacturing purposes, and for supplying the towns of National City, San Diego, and other towns and places in said county, and the inhabitants thereof, with pure, fresh water;" that "on the said 9th day of June, 1869, in furtherance of its aforesaid purposes and intentions, and as appurtenant to its said proposed system of water-works, said corporation, the Kimball Brothers Water Company, purchased from the said Frank A. Kimball and Warren C. Kimball, and the said Frank A. Kimball and Warren C. Kimball duly granted and conveyed unto said corporation, its successors and assigns, forever, the right to divert and appropriate all the waters flowing in said Sweetwater river at any point or points thereon, and to conduct the same over, along, and across any of the lands then owned by said Frank A. Kimball and Warren C. Kimball, together with the right to ingress, egress, and regress in, over, and upon all such of the aforesaid lands of said Frank A. Kimball and Warren C. Kimball, and to dig and take all such stone and earth from the aforesaid lands of said Frank A. Kimball and Warren C. Kimball as might or should be necessary or convenient to said corporation in and about the diversion of the waters of said river and the construction and maintenance of its said contemplated system of water-works," which said deed, it is alleged, was duly recorded in the office of the recorder of the county where the property is situate on the day of its execution. The answer further sets up that the rights thus conveyed to the Kimball Brothers Water Company subsequently passed, by various mesne conveyances, duly executed and recorded, to the defendant company, under and by virtue of which defendant erected the dam, and made the diversion of water complained of. The disposition of the exceptions filed by the complainant to the answer, now to be made, depends upon the construction to be given to the deed of June 9, 1869, from Frank A. and Warren C. Kimball to the Kimball Brothers Water Company, and upon the effect to be given to the fact appearing in the answer that the articles of incorporation of that company were signed and acknowledged by Frank A. Kimball, Warren C. Kimball, and Levi W. Kimball, by W. C. Kimball, his attorney in fact. The state statute in force at the time the articles were filed provided that such articles should be signed and acknowledged by at least three persons, and the point is made that the signing and acknowledgment of such articles by an attorney in fact of another is of no validity. Whether or not this is so I think unnecessary to de-

cide in this case, for the reason that the answer shows that the Kimball Brothers Water Company was a *de facto* corporation, and the rule is that a conveyance to or by a corporation existing *de facto* cannot be avoided upon the ground of any defect in its organization. Such transfer will be held valid and binding as against all parties but the state. *People* v. *La Rue*, 67 Cal. 526, 8 Pac. Rep. 84; Mor. Priv. Corp. § 753, and authorities there cited. The Kimball Brothers Water Company was formed, as has been said, for the purpose, among other purposes, of supplying the town of National City and the city of San Diego, and the inhabitants thereof, with pure, fresh water. It is provided by the statute under which the company was formed that any company incorporated for such a purpose "shall have the right to purchase or appropriate, and take possession of, and use and hold, all such lands and waters as may be required for the purposes of the company upon making compensation therefor." Hitt. Laws, § 963. By section 1001 of the Civil Code of California it is provided that "any person may, without further legislative action, acquire private property for any use specified in section 1238 of the Code of Civil Procedure, [among which uses is the supplying of towns and cities with pure, fresh water, and the supplying of water for agricultural, mining, and manufacturing purposes,] either by consent of the owner, or by proceedings had" for the condemnation of property. The supreme court of the state in the case of *Water Co.* v. *Forbes*, 62 Cal. 182, held that by virtue of these and other provisions of the state statute the waters of running streams may be condemned for the purpose of supplying the inhabitants of a town with water. It has also been many times decided by the supreme court of California, as well as by the supreme court of the United States, that the waters of non-navigable running streams in California may be acquired by appropriation for any or all of the purposes already mentioned. *Irwin* v. *Phillips*, 5 Cal. 140; *Ortman* v. *Dixon*, 13 Cal. 38; *McDonald* v. *Water & Min. Co.*, Id. 232; *McKinney* v. *Smith*, 21 Cal. 381; *Canal Co.* v. *Kidd*, 37 Cal. 314; *Atchison* v. *Peterson*, 20 Wall. 511; *Basey* v. *Gallagher*, Id. 682. If such waters can be acquired by appropriation and by condemnation proceedings, *a fortiori*, they may be acquired by express grant of the owner of the land over which they run. *Cross* v. *Kitts*, 69 Cal. 222, 10 Pac. Rep. 409.

The answer, to which exceptions are taken, alleges as has been seen, that at the time of the execution of the deed of June 9, 1869, the grantors, Frank A. and Warren C. Kimball, were the owners in fee of the bed of the Sweetwater river, and of all the land on each side thereof, from the point thereon where the dam and reservoir of the defendant is located to the place where the river empties into the bay of San Diego, including the land subsequently conveyed by the Kimballs to Copeland, and now owned by the complainant. Being the owners in fee of the land as well as the water, it was competent for them to grant all or any portion of either. "A grantor of land through which a stream of water flows may reserve the water privilege, or he may convey the use of the water in whole or in part, leaving the fee of the land vested in the grantor." Gould, Waters, § 299. "'A grant of a water-course in law,' says

JESSEL, M. R., 'especially where coupled with other words, may mean any one of three things. It may mean the easement or the right to the running of water, it may mean the channel-pipe or drain which contains the water, and it may mean the land over which the water flows. What it does mean must be shown by the context; and if there is no context I apprehend that it would not mean anything but the easement,—a right to the flow of the water. A grant of a 'pool' or 'gulf' or of a 'pond' passes the land which is covered with water. So a grant of a 'well' or 'spring' or 'wharf' is effectual to pass the soil as well as the water." Id. § 304a. By the deed of June 9, 1869, the owners in fee of all the land and water here in question granted to the Kimball Brothers Water Company, its successors and assigns, "all the water flowing in the stream called 'Sweetwater River,' * * * in said county of San Diego, with the right to divert the same from its natural channel at any point or points, and to conduct the same over, along, and across any of the lands of the parties of the first part [the grantors] in said county, by means of flumes, canals, and aqueducts, together with free ingress, egress, and regress to and for the said party of the second part, [the Kimball Brothers Water Company,] its successors and assigns, and its and their servants and workmen, with horses, carts, and carriages, at all convenient times and seasons, in, along, and upon said flumes, canals, and aqueducts, for the amending, cleaning, and repairing of the same, with liberty and privilege for the purpose to dig and to take stone and earth from the adjacent lands of the party of the first part, when and as often as need or occasion requires. To have and to hold, all and singular, the premises and privileges hereby mentioned and granted, or intended so to be, with the appurtenances, unto the said party of the second part, its successors and assigns." I do not think there is any room for mistake in respect to the true meaning of this language. It is impossible to limit its scope to the water flowing in the river at the instant of the execution of the deed. Such a construction would be absurd. It is true, as said by complainant's counsel, that the deed does not use the words all waters "hereafter to flow" in the Sweetwater river; but the language employed cannot reasonably be construed any other way than as embracing the waters then flowing and thereafter to flow in that river. The grantee, its successors and assigns, were granted the right to divert the waters granted from their natural channel at any point or points. Such diversion necessarily must occur subsequent to the grant, which must therefore necessarily include the waters thereafter flowing in the stream. The purpose had in view by all of the parties, as well as the language used, clearly shows that the grant was continuous and perpetual in its nature, and included not only the water at the time flowing, but thereafter to flow, in the stream in question, and inured not only to the benefit of the grantee, but in express terms to its successors and assigns as well. No legal reason exists why it could not. The water in question was a part and parcel of the land over which it flowed, and when its owners granted the water they necessarily granted an interest in the land, which interest was assignable, descendible, and devisable. The grant

to Copeland, under which complainant holds, being subsequent to that under which defendant claims, is of course subject to it. From the view taken of the principal exceptions the others become unimportant. Exceptions overruled.