[Civ. No. 1980.   Fourth Appellate District.—March 10, 1937.]

WALLACE SCOTT HARPER et al., Appellants, v. DEN-
NIE D. BUCKLES, Respondent.

H. E. Gleason, John F. Poole and Harry F. Sewell for Appellants.

William Guthrie and Jesse W. Curtis, Jr., for Respondent.

MARKS, J.—This is an action to quiet title to "all water, water rights, pipe lines, reservoir rights, and rights of way and pumping equipment appurtenant to Deer Lodge Park in the County of San Bernardino, State of California, a map of which Deer Lodge Park is recorded in Book 24, of Maps at Pages 50 to 53 inclusive, Records of said San Bernardino County". Judgment went in favor of certain of the defendants and plaintiffs have appealed from a portion of it.

This case was before us at an earlier date. (*Harper* v. *Buckles,* (Cal. App.) 60 Pac. (2d) 180.) A rehearing was granted to permit examination of questions not considered at that time. While we are now satisfied that the conclusions reached in the first decision were correct, the opinion originally prepared by Mr. Justice *Pro Tempore* Turrentine may not here be used in its entirety as some amplification of it is deemed desirable.

At the commencement of the trial it was stipulated that F. G. Stickney was the common source of title of the parties to this action. On May 28, 1923, F. H. Krause and Dora Krause, his wife, acquired title from Stickney to the north half of section 8, township 2 north, range 3 West, San Bernardino Base and Meridian in San Bernardino County. The grant, among other things, included ''also all rights, title and interest in and to a water appropriation of twenty-five thousandths cubic feet per second from January 1 to December 31 of each year, according to a Permit No. 1203 issued by the State Department of Public Works November 13, 1922''. On the same day F. H. Krause and Dora Krause, his wife, executed a deed of trust upon this real property and water right, to the Pioneer Abstract and Title Company, as trustee, and F. G. Stickney and Mathilda S. Stickney, as beneficiaries, to secure the payment of three promissory notes in the total principal sum of $11,000. This deed of trust was regularly foreclosed and on October 22, 1929, the Pioneer Abstract and Title Company executed a trustee's deed conveying to D. D. Buckles, as parcel No. 1, the real property and water right already described, saving and excepting two subdivisions known as Deer Lodge Park and Arrowhead Gardens, which had been carved out of the half section, and a parcel, number II, which is described in the bill of exceptions as follows:

''The following described lots in DEER LODGE PARK SUBDIVISION . . . (Here follows specific description of certain lots in said subdivision.)'' The following was also included: '' . . . Together with all appurtenances. TO HAVE AND TO HOLD the said property with the appurtenances, unto the said party of the second part, his heirs and assigns forever, but without covenant or covenants, expressed or implied, regarding the title to said property or incumbrances thereon.''

Defendants Maxwell Krause and his wife asserted title to all of the unsubdivided portions of the half section already described and also a number of lots in Deer Lodge Park. Defendant Buckles asserted title to the water rights and the water, and a water distributing system that had been constructed to serve at least a portion of the lots in Deer Lodge Park and also to a number of lots in that subdivision and in Arrowhead Gardens. Other defendants asserted title to lots in both subdivisions. As the water rights and water distributing system are all that are in controversy here, and as that controversy is between plaintiffs and defendant Buckles, we need give no further consideration to those portions of the judgment which quiet title to parcels of land in defendants other than Buckles.

Plaintiffs deraign title through a deed of trust dated June 29, 1926, executed by F. H. Krause and Dora Krause, his wife, to Security Title Insurance and Guaranty Company trustee and Citrus Belt Building and Loan Association beneficiary, to secure the payment of a note in the principal sum of $5,900. As security, the deed of trust described sixty-four lots in Deer Lodge Park and ''also all water and water rights, pipe lines, reservoir rights and rights of way and pumping equipment appurtenant to Deer Lodge Park, together with the appurtenances thereto. . . . All things now or hereafter in any manner affixed to said real estate or its improvements for any purpose, shall be deemed a part of the realty.'' This trust deed was foreclosed and under date of October 28, 1929, the Security Title Insurance and Guaranty Company executed its trustee's deed conveying the property just described to the Citrus Belt Building and Loan Association. Under date of March 15, 1932, the Citrus Belt Building and Loan Association conveyed this property to W. J. Harper and May V. Harper, his wife. By a deed dated October 17, 1933, W. J. Harper and May V. Harper conveyed this same property to Wallace Scott Harper and Virginia Harper, his wife, the plaintiffs in this action.

We are not able to determine the dates of recordation of some of the instruments to which we have referred. No question is raised by counsel as to any right intervening between the date any instrument bears and the date of its recordation. We will, therefore, assume that each such instrument was promptly recorded.

There is attached to the bill of exceptions photographic copies of the three pages of the subdivision map of Deer Lodge Park. These copies are so small and indistinct that they were of little assistance to us. During the second argument plaintiffs produced larger copies of these maps and it was stipulated that these become part of the record on appeal.

We will hereafter refer to D. D. Buckles as the defendant in this action, and the deed of trust dated May 28, 1923, which is in his chain of title, as the first trust deed. We will refer to the trust deed dated June 29, 1926, which is in plaintiffs' chain of title, as the second trust deed.

The first question presented for our consideration is the interest in the water rights and the water system acquired by defendant under the first deed of trust and the trustee's deed to him. At the date of the first deed of trust no part of the water system had been constructed. A considerable portion of it was constructed between that time and the date of the second deed of trust. We cannot determine how much of it was constructed after the date of the second deed of trust. At the time of the trial the system served a considerable number, but not nearly all of the lots in Deer Lodge Park. While the use made of the water by the customers of the system is not at all clear from the record we believe we are safe in assuming that it was furnished and used for domestic purposes.

The case of *Stanislaus Water Co.* v. *Bachman,* 152 Cal. 716 [93 Pac. 858, 15 L. R. A. (N. S.) 359], is factually similar to the instant case. There the parties were asserting adverse interests to an irrigating water system claimed through foreclosures of first and second incumbrances. Much of the system was constructed after the execution of the first incumbrance. That an irrigating system was involved in that case, and a domestic water system in the instant case, should make no difference in the principles of law involved. In deciding the Stanislaus Water Company case the Supreme Court said:

"The rights of Bachman under the agreement are the same as those of Threlfall.

"It is immaterial that the mortgages of Threlfall's land, under which Bachman acquired title, were executed before Trelfall obtained the water-right. The water-right, when acquired, became an easement appurtenant to the land (*Farmer* v. *Ukiah Water Co.,* 56 Cal. 11, 13) and passed with it, upon

the foreclosure sale in the same manner as any other appurtenance or fixture passes with the title and possession of land. (Civ. Code, secs. 1084, 1104; *Cave* v. *Crafts,* 53 Cal. 135, 140; *Farmer* v. *Ukiah Water Co.,* 56 Cal. 11, 13; *Cross* v. *Kitts,* 69 Cal. 217, 221 [10 Pac. 409, 58 Am. Rep. 558]; *Smith* v. *Corbit,* 116 Cal. 587, 591 [48 Pac. 725].) It was an incident of the land and would pass as such by a conveyance of the land, without express mention and without any reference thereto, such as by the use of the word 'appurtenances' or otherwise. A conveyance of land upon a foreclosure sale must, of necessity, at least as between the parties to the mortgage, carry with it a water-right appurtenant to the land acquired and used by the mortgagor for the benefit of the land, although obtained after the execution of the mortgage and before the sale on foreclosure. We are cited to no authority for or against this proposition, and have not succeeded in finding any relating to it, but from the nature of the case it must be correct. Fixtures subsequently attached to mortgaged land pass to the purchaser at foreclosure sale, although not mentioned or referred to in the mortgage. (*Merritt* v. *Judd,* 14 Cal. 59, 72; 2 Jones on Mortgages, sec. 1657; 1 Am. & Eng. Ency. of Law, 255.) The same rule applies to improvements made by the mortgagor on mortgaged land. (1 Jones on Mortgages, secs. 147, 681; *Union Water Co.* v. *Murphy's Flat F. Co.,* 22 Cal. 620, 631; *Tibbits* v. *Moore,* 23 Cal. 208, 215.) We are unable to perceive any material difference in principle, in this respect, between fixtures and improvements attached to or erected upon land, and a water-right attached to land as an appurtenance, such as that here involved, and we hold that it is governed by the same rules.

''This principle probably applies also to the right of the Stanislaus Water Company to the lateral ditch built for the Stanislaus and San Joaquin Water Company from the main canal to Threlfall's land. It was used in connection with the canal for its benefit, and it was, therefore, an appurtenance to the canal. Although not in existence at the time the canal and water system were mortgaged, it became a part of the system as soon as it was constructed. It is not necessary to this case to determine whether or not it passed to the plaintiff by the foreclosure sale under the prior mortgage. The two interested parties appear to have assumed that it did. It was expressly included in the foreclosure sale and in the deed

to the plaintiff, and the plaintiff took possession of it accordingly and used it to carry to the plaintiff's land the water for the rental of which it here claims compensation. Under these circumstances, it is immaterial, in this action, how it acquired title to the lateral.''

When we apply the principles thus announced to the facts of the instant case the conclusion follows that the water system constructed between the dates of the first and second deeds of trust became appurtenant to the land and became incumbered by the first deed of trust. It follows that as an appurtenance to the land, title passed to defendant at the time of the trustee's sale, and the execution of the trustee's deed to him as the lien of the first trust deed was prior and superior to the lien of the second.

Plaintiffs seek to escape the results of this conclusion by asserting that the trial court found that defendant owned but few lots in Deer Lodge Park at the time the complaint was filed. That statement is true, but plaintiffs can draw no comfort from it. The complaint was filed on February 21, 1934, and the case was tried on July 24, 1934. The deed to defendant was dated October 22, 1929. We cannot, without supporting evidence, and for the purpose of reversing the judgment, assume that the lots owned by defendant in 1934 were all that he acquired under his deed in 1929. As we have seen, the partial copy of the deed to defendant, found in the record, does not contain the description of the property conveyed to him. In lieu of a description of the property is inserted, ''Here follows specific description of certain lots in said subdivision.'' In the absence of this evidence from the record we are required to presume that the missing evidence supported the findings and judgment. While the quoted sentence might imply that the trustee's deed to defendant did not convey to him every lot in Deer Lodge Park, if a single lot were omitted from the description in the conveyance the reasonable meaning of the quoted language would be satisfied. Therefore, in view of our duty to presume that the missing evidence supported the findings and judgment we must presume that the trustee's deed to defendant described all but one of the lots in Deer Lodge Park. There is nothing in the record to force the conclusion that the water system was appurtenant to every lot in Deer Lodge Park. Therefore, in performance of the same duty we must assume

the water system was appurtenant only to those lots acquired by defendant through the trustee's deed to him.

The same situation exists as to those portions of the water system constructed between June 29, 1926, and 1934. It being once established that the first trust deed created a first lien on the water right and distributing system and that defendant acquired all but one of the lots in Deer Lodge Park and all of the lots to which the water system was appurtenant on June 22, 1929, that fact will be presumed to exist until the contrary is proven. There is no evidence in the record to force the conclusion that defendant conveyed away any interest in the water system or the land to which it was appurtenant prior to January 1, 1934, at which time it would appear that the water system was completed.

It is true that the trial court found that certain of the co-defendants of Buckles owned some of the lots in Deer Lodge Park. No chain of title appears to the lots owned by any of them. If such assumption be necessary we may assume that if Buckles deeded lots to any of them he reserved the appurtenant part of the water system. As he acquired title to the water right and water system by foreclosure of a first lien his title was superior to any claimed by plaintiffs.

On the record before us the judgment must be affirmed. It is so ordered.

Barnard, P. J., and Jennings, J., concurred.