THE STATE EX REL. SEDALIA WATER COMPANY v. HARRY H. HARNS-BERGER, Collector of Revenue of Pettis County, Appellant.—14 S. W. (2d) 554.

Division Two, March 2, 1929.

*E. W. Couey, George F. Longan* and *Paul Barnett* for appellant.

*James T. Montgomery* and *Montgomery, Rucker & Hayes* for respondent.

WHITE, C. J.—The relator filed its petition in the Circuit Court of Pettis County praying for a writ of mandamus to compel the respondent, Collector of Revenue of Pettis County, to receive and receipt for a sum tendered by the relator in payment for taxes assessed against the relator for the year 1927.

The tax books of Pettis County show that the petitioner was assessed for taxes in 14 items, in the aggregate sum of $10,771.47. Of those 14 items the controversy turns upon items VII and X. They are stated in the petition as follows:

"ITEM VII: Valuation $600,000; 45.29 acres consisting of thirty acres, the southeast corner of the northwest quarter of the northwest quarter, 11.29 acres, the southwest part of the northwest quarter of the northwest quarter and the north side of the southeast quarter of the northwest quarter, and four acres the north side of the north half of the southwest quarter of the northwest quarter north of the creek, all in section 22, township 45, and range 21:

| | |
|---|---|
| State tax .........................................$ | 780.00 |
| County tax ....................................... | 2160.00 |
| Road tax to road district No. 39 ................. | 900.00 |
| School tax to School District No. 29 ............. | 1500.00 |
| Total ......................................$ | 5340.00 |

"ITEM X: Valuation $110,000; water mains, City of Sedalia:

| | |
|---|---|
| State tax .........................................$ | 143.00 |
| County tax ....................................... | 396.00 |
| Road tax to road district No. 39 ................. | 165.00 |
| School tax to Sedalia School District No. 200 ........ | 1496.00 |
| City of Sedalia .................................. | 550.00 |
| Total ...................................$ | 2750.00 |

"That the property distributed in Item X, being water mains in the city of Sedalia, are water mains which are a part of the water mains running underground from the pumping station of the respondent on the 45.29 acres of land above described, in Item VII, to and into the city of Sedalia and under the streets and alleys thereof through which the respondent supplies water to the city of Sedalia and the inhabitants thereof and that said water mains are all appurtenant to the said pumping station and the real estate of which said station is a part."

The amount of taxes assessed against the petitioner in Item X, $2750, deducted from the total, leaves $8021.47. The petitioner, relator; struck out Item X, and sent his check to the collector for the balance. Attached to the check was the receipt in full for the taxes paid. There is dispute as to the purport of that receipt. No question is raised that the tender of the check was a sufficient tender, but respondent refused it. The trial court rendered judgment for the petitioner and found as follows: ''. . . that the tax books of Pettis County, Missouri, show that the property of the relator was charged with the fourteen several items of taxes for the year 1927 as set out in said petition and said alternative writ of mandamus; that the total amount of said taxes for the year 1927, as shown by the said tax books, was $10,771.47 embraced within the fourteen items set out in the relator's petition and alternative writ of mandamus; that on December 31, 1927, the relator tendered to the respondent the sum of $8021.47 in payment of all of the taxes levied and assessed against the said property described in all of the said fourteen items excepting Item X thereof, which Item X amounted to $2750, and that the said respondent refused to accept the said tender of $8021.47 because the said tender did not include the payment of the taxes described in the said Item X; that the refusal of the said respondent to accept payment for the said thirteen items aforesaid was a denial to the relator of its legal right to pay the taxes which appear by said tax books to have been assessed and levied against the several items of its property described in the thirteen several items aforesaid; that the relator has paid into court for the respondent the said sum of $8021.47 and that the clerk of the court is now holding the same subject of the acceptance of the respondent, and that the relator is wholly without any remedy in the premises by or through the ordinary process or proceedings at law.

''It is therefore considered, adjudged and decreed that the respondent, having failed to show cause why he should not have accepted the tender of taxes, be and he is hereby ordered and directed to accept of the relator or of the clerk of this court the said sum of $8021.47 in payment of the said thirteen items of taxes aforesaid, and is hereby ordered and directed to give the relator the statutory receipt therefor. It is further adjudged and decreed that a peremptory writ of mandamus be issued herein.''

I. First it is claimed by the appellant that relator could not pay part of the taxes assessed against it and leave the rest unpaid.

The general rule, as laid down in 37 Cyc. (pp. 1164 and 1165), is as follows:

"But the citizen always has the right to pay the amount of any one tax listed against him, while refusing or omitting to pay others, or to pay the taxes for a current year, and contest those assessed for previous years, *or to pay the tax on any one piece or item of his property which is separately assessed, without offering to pay the taxes on other parts.*"

The fourteen items in relator's taxbill were separately assessed, Item X standing by itself. The rule quoted from Cyc, according to the common practice, would apply here.

Appellant calls attention to the following language, Section 12905, Revised Statutes 1919:

"The collector shall receive taxes on part of any lot, piece or parcel of *land* charged with taxes."

He claims that Item X describes personal property, and his argument seems to be that Section 12905 impliedly provides that personal property assessed in different items to the same person could not be separated in the payment of taxes.

The provision quoted means that where a single tract of land is assessed as *one* item the taxpayer may pay on any part of that lot without paying on the rest. It gives a taxpayer on real estate an additional advantage over a taxpayer on other forms of property. State ex rel. v. Railway Company, 178 S. W. 444, cited by the appellant, is where there were no separate items, but the taxpayer made a deduction from the total amount assessed for one year and wanted to pay that. Where a man, for instance, owns two stocks of goods in separate stores, assessed separately, there is no reason or law which would prevent him from paying the taxes on one, and test the validity of the other by refusing to pay. The taxpayer may be assessed on his stocks and bonds in one item and on his household goods in another item. Undoubtedly he could pay on one without paying on the other, and the collector would be obliged to receive such payment and receipt for that item. Assuming for the purpose of the argument that the property listed in Item X is personal, it is assessed in a separate item and relator had a right to pay upon the rest, strike that item from the list and test its validity, as he does in this case.

 II. Appellant claims further, however, that the tender was conditional because a voucher was attached to the check. The letter with which the relator sent a check, read:

"Kindly return receipt to us in enclosed envelope and oblige."

The receipt read:

"Received from Sedalia Water Company $8021.47 in full payment of above account."

Mr. Andrews, president of the Water Company, testified that no condition was attached to the reception of the check; that it was not

necessary to sign any voucher in order to receive the check for the remaining items. The trial judge appended to the files an opinion in the nature of a finding in which he said that the amount of Item X, $2750, was not only stricken off but subtracted from the total, and the collector's attention called to the subtraction and the erasure. So that when the check was remitted in payment, with an attached receipt for $8021.47, "in full payment of the above account," it was the exact amount of the remaining 13 items and in full of the account as it stood with Item X stricken off. Thus the tender was full and complete and the relator had a right to compel its acceptance in full payment of the account as it actually stood with Item X omitted.

III. We might affirm the judgment from the conclusion already reached. That disposition would leave the matter open for a separate suit by the collector for the amount contained in Item X. Both parties, however, desire to settle the question whether the relator is liable for the taxes shown by that item.

It will be noticed that Item X, as set out above, is as follows:

"Valuation $110,000; water mains, City of Sedalia."

Item VII set out above, consists of 45.29 acres of land two and one-half miles south of the center of Sedalia, and outside the corporate limits, upon which is located the plant and machinery of the relator water company. The water mains mentioned in Item VII are connected with the plant. The respondent contends that those water mains are appurtenant to the plant because they would be useless and the plant would be useless unless the water could be pumped into the mains from the plant and constantly used by the company for the purpose of supplying the city of Sedalia with water; that the mains and the plant all consist of one system, and that the valuation placed upon the tract of land upon which the plant is located includes not only the machinery located upon the land but the water mains that lead from it. The forty-five acres is described as a tract of land and no mention is made of the plant machinery or buildings upon it. The appellant contends that the water mains in the middle of the street in Sedalia are personal property and not appurtenant to the plant, and therefore it is taxable as a separate item.

It appears from the evidence that the State Tax Commission sent an engineer to Sedalia to value the plant, which he did as six hundred thousand dollars. And that valuation included the power plant, the mains *and the distribution system connected with it*. The respondent therefore asserts that to pay a separate tax on these mains would be double taxation because the value is included in that six hundred thousand dollars.

103 at top right

Whether pipe lines connected with a water plant are appurtenant to the real estate upon which the plant is located is something controlled by statute. Appellant cites Shelbyville Water Company v. People, 140 Ill. 545, holding that such pipe lines are personal property and properly assessed as such, separate from the plant. An Illinois statute provides for just that method, and therefore the case is not in point.

The doctrine in Iowa is that the water mains laid in the streets of a city and connected with the plant of a water company are appurtenant to the tract of land upon which the plant is located, and therefore included within the assessed value of the land. [Appeal of Des Moines Water Co., 48 Iowa, 324.] The same was held as to gas mains and pipes. [Capital City Gas Light Co. v. Charter Oak Ins. Co., 51 Iowa, 31.] In the Des Moines Water Company case the Supreme Court of Iowa said (l. c. 331):

"The argument that if the mains are real estate, that part which is laid in Lee Township should have been there assessed the same as any other real estate, is answered by the fact that their mains acquire their real estate character by being appurtenant to the water-works, and in a conveyance of the works would pass as incident to the principal thing, without any conveyance of the land where they are located."

In Stearns Lighting & Power Co. v. Central Trust Co., 223 Fed. 962, it was held that a mortgage which conveyed a twenty-five-year lease of property, upon which an electric power plant and generating machinery were situated, carried the transmission lines by which the power was carried to the consumer. The court said (l. c. 967), speaking of the erection of the transmission line:

"It was a necessary and integral part of the electric plant. It was physically connected with and annexed to the power plant and generating machinery, which it must be conceded were real estate. Without the transmission line the entire property would have been valueless for the purposes for which it was constructed and created. Its construction and annexation were intended to be permanent. It could not be severed from the rest of the plant or machine without not only impairing but destroying the whole. It thus contained and combined in itself all the elements and attributes of a fixture or appurtenance to real estate."

In Badger Lumber Co. v. Marion Water Supply Co., 15 L. R. A. 652, where an electric light and power company had a franchise from the city and used the streets for the erection of poles on which to stretch wires and suspend lamps, the Kansas Supreme Court held that the poles and wires were appurtenances to the premises of the company and a mechanic's lien for poles furnished would lie against the property on which the plant was situated, although the poles were

in the streets and not on the plant. The court said (1. c. 655), quoting Bouvier's definition of appurtenances:

"Things belonging to another thing as principal, and which pass as incident to the principal thing. . . . Thus, if a house and lot be conveyed, everything passes which is necessary to the full enjoyment thereof, and which is in use as incident or appurtenant thereto."

The court then in commenting upon the principle said:

"Here the principal thing was the power-house, and the poles and wires attached thereto were an incident to the power-house and machinery. They were necessary to the enjoyment of the principal thing, and indispensable in the transmission of electricity and the lighting of the city."

In the footnote to that opinion many cases are cited illustrating the attitude of different courts regarding similar situations.

In Oskaloosa Water Co. v. Board of Equalization of Oskaloosa City, 15 L. R. A. 296, the Iowa Supreme Court held that the mains, pipes and hydrants of the water company are appurtenant to and taxable with the real estate where the main works are located.

The Supreme Court of Maine in Case of Inhabitants of Paris v. Norway Water Co., 85 Me. 330, held that under a statute water pipes, hydrants, etc., laid in the streets of a city are taxable as real estate to the company in possession of them, the court holding (1. c. 335) that they could not be considered as appurtenances to the place of supply and taxable there, and disagreeing specifically with the Iowa doctrine. It is difficult to grasp the reasoning by which such pipes could be taxed as real estate apart from any land of the person who owns the pipes. They are not in themselves real estate. They could be real estate only by being appurtenant to the real estate of the owner.

The weight of authority and of reason seems to be with the Iowa rule.

Our statute, Section 12967, defines what shall be considered real estate for the purpose of taxation, to include not only the land itself but also all buildings, structures and improvements and other permanent fixtures of whatever kind: ". . . and all other property *belonging to* manufactories of whatever kind . . . *and all rights and privileges* belonging or in any wise *pertaining* thereto, except where the same may be otherwise denominated by this chapter."

And personal property includes in its definition: "Every tangible thing being subject to ownership, whether animate or inanimate, and not forming part or any parcel of real property as hereinbefore defined."

Appellant cites Mulrooney v. O'Bear, 171 Mo. 613. In that case the Hodiamont Realty Improvement Company platted a subdivision adjoining the city of St. Louis, and, in order to make the lots salable,

obtained a water supply from the city and laid a supply pipe on the road known as Maple Avenue and connected with it water pipes leading to the lots which were sold. It was held that the pipes leading to the separate lots were real estate and appurtenant to the lots on which and to which they were laid. These pipes necessarily connected with the supply pipe in the street. It was held that the supply pipe laid in the street was not appurtenant to the several lots but was personal property. It was separately sold by the company to an individual as distinct from the lots. The purchaser didn't own the street in which they were laid and necessarily they were personal property. They were not appurtenant to the lots from which pipes ran to connect with it, though the owner of each lot had a several right to such connection. The pipes in the lots necessarily extended into the street and were appurtenant to the lots, although partly in the street. The court in commenting upon the situation held that a deed which the owner of a lot received did not purport to carry the ownership of the supply pipes in Maple Avenue, and said (1. c. 619), quoting from a New York case:

"Easements existing as appurtenant to a grant of lands. and as arising by implication, *only* by reason of a necessity to the full enjoyment of the property granted."

In this case the water mains in the streets of Sedalia are practically worthless considered as personal property, separated from the soil. They are *"necessary to the full enjoyment of the property."* The plant located upon the land of the relator would be absolutely worthless without the pipes and the pipes would be worthless without the plant which supplies them with water. They are appurtenant. "An appurtenance is a thing used with and related to or dependent upon something else which is its principal." [Words and Phrases.] There could be no case in which one thing is more completely dependent upon another for its value and utility than the water mains are dependent upon the plant which supplies them with water.

The statute noted says real estate shall include *"rights and privileges pertaining to"* the land and fixtures thereon. The dictionary meaning of "pertaining" is "to belong," "have connection with" or "be dependent upon" something. The participle "pertaining" as used in the statute includes the relationship of an appurtenance. It includes all *rights* and *privileges* connected with the plant situated upon the tract of land described and must include the right to lay water mains in the street. The land was acquired and the plant established for the purpose of that service. The right to lay pipes in the street was an absolute necessity inseparably connected with the plant and inseparably connected with the water mains laid under and by virtue of that right. That right is appurtenant to that plant —*pertains* to it. How is it possible to separate that right from the

improvement made in pursuance of it? How could one say that the *right* in this case belongs to and is connected with the power plant, as an appurtenance, and at the same time say that the pipes laid by virtue of that right are *not* connected with it?

How can you separate the *exercise* of a privilege from the privilege itself? How can you separate the water mains laid in the street from the *right* to lay such mains so far as the character of the property is concerned?

Upon both reason and authority the water mains in the streets in the city of Sedalia are appurtenant to the land upon which the plant is located, and therefore should be valued as a part of the real estate, and were so valued by the Tax Commission.

The judgment of the trial court is affirmed. All concur.