[Sac. No. 5587. In Bank. June 16, 1944.]

DORA B. TRASK, Plaintiff and Respondent, v. JOSEPH A. MOORE et al., Appellants; EDWARD EALEY, Cross-Defendant and Respondent.

T. B. Scott and Nathan B. McVay for Appellants.

Herbert E. Paul for Plaintiff and Respondent.

Francis O. Hoover for Cross-defendant and Respondent.

CURTIS, J.—The defendants appeal from a judgment quieting title in the plaintiff to "that certain water distributing system including the pipes, situate in the Modesto High School Tract now in the possession of defendants and formerly connected to wells and pumping plants located upon Lots 7 and 8 in Block 'D' and Lots 22 and 23 in Block 'B' of the Modesto High School Tract"; directing the defendants to "reconnect the said pipes and the said distributing system to the aforesaid wells and pumping plants in as nearly as possible the manner

in which the same were at the time the defendants disconnected the same''; and decreeing that the ''plaintiff is entitled to an accounting by defendants of all moneys received by said defendants from the operation of said pipes and distributing system from November 18, 1940, to the date of reconnection . . . as herein ordered.'' The notice of appeal further recites that the defendants as cross-complainants appeal from the judgment in favor of the cross-defendant Ealey.

There is no dispute concerning the material facts of this case: On February 21, 1939, and for several years prior thereto, the cross-defendant Ealey was the owner of the four lots mentioned in the judgment as situated in the Modesto High School Tract, an unincorporated residential district adjacent to the city of Modesto. Upon this property were located two wells and pumping plants from which there extended a series of pipes furnishing water to approximately seventy neighboring homes at a monthly rate. On the date mentioned Ealey executed to the plaintiff as security for his promissory note a deed of trust covering these four lots ''together with the rents, issues and profits thereof; also all appurtenances including water rights in which trustor may have an interest, whether represented by stock of any water company or otherwise, benefiting the property herein described.'' Thereafter, and on March 1, 1939, Ealey sold these same lots to the defendants Moore, and by a separate conveyance he transferred to them the water distributing system. Upon default in the payment of the aforesaid promissory note the property was sold under the deed of trust, the plaintiff became the purchaser thereof at the sale, and the trustee's deed was executed and delivered to her on November 18, 1940. Some six months prior to these foreclosure proceedings the defendants Moore had disconnected the water distributing system from the pumping plants on the premises in question and attached it to a well and pumps installed on other lands owned by them. Under these circumstances the plaintiff brought the present action to have the distributing system reconnected and for an accounting with respect to the defendants' operation thereof since the date of her purchase of the property at the trustee's sale. The portion of the distributing system here involved lies entirely outside of the bounds of the lots described in the deed of trust and consists largely of pipes and mains placed in the streets and alleys of the Modesto High School Tract.

The trial court's findings and its judgment rendered in favor

of the plaintiff, as in part above noted, establish that it took the following view of this case: (1) That the distributing system involved, although lying without the limits of the land described in the deed of trust, passed to the plaintiff as an *appurtenance* of the lots which she purchased at the trustee's sale; and (2) that while "the Railroad Commission of the State of California did not authorize Ealey to execute said note and said deed of trust on said property," the distributing system in question was *not a public utility* so as to require the commission's order of authorization prior to the valid execution of the security instruments. (Pub. Util. Act, § 52(d); Stats. 1915, p. 115, as amended; Deering's Gen. Laws, 1937, Act 6386, p. 3167.) Application of settled legal principles to the undisputed facts disclosed by the record herein sustains the trial court's decision as premised upon the above two determinative points.

▇▇▇ The first matter for consideration is the interest in the water system acquired by the plaintiff under the deed of trust. It appears from the record that for some time prior to the date of execution of said security instrument the water piping system in question had been annexed and physically connected with the pumping plants on Ealey's lots; that the piping as laid throughout the streets and alleys was merely an extension and continuation of the apparatus for the production and distribution of the water supply—a part of it, and not separable from it without destroying the efficiency of the whole; and that the waterworks as so constructed were functioning as an integrated system when the loan arrangements between the plaintiff and Ealey were consummated, as above detailed. Appurtenances are things belonging to another thing as principal and which pass as incident to the principal thing. (Bouvier, Law Dict., Sub., Appurtenances.) Here the principal thing was the pumping works, and the piping system attached thereto was an incident to the main machinery—the pumps and the wells. Such pipe extension was necessary to the enjoyment of the principal thing and indispensable in the supply of water to the neighboring homes in the tract. By being so joined and essential to the function of the apparatus as a whole, the distributing system contained and combined in itself all of the elements and attributes of a fixture or appurtenance to real estate. (Civ. Code, § 662; 6 C.J.S. p. 133, et seq.)

Analogous considerations as to structural appendages were

involved in the case of *Western Elec. Co., Inc.* v. *Colley,* 79 Cal.App. 770, 775 [251 P. 331], where it was stated that "a power line, consisting of poles set in the ground and wires strung thereon, would pass as appurtenant to one's land upon the owner executing a conveyance of the soil upon which the poles of the power line stood or were imbedded." In line with this principle are cases from other jurisdictions holding that electric transmission lines and similar structures, *though extending beyond the real estate upon which the mechanical plant is situated,* constitute an appurtenance to the plant so as to be encumbered by a lien attaching to the realty: *Wells* v. *Christian,* 165 Ind. 662 [76 N.E. 518]; *Badger Lumber Co.* v. *Marion Water etc. Co.,* 48 Kan. 182 [29 P. 476, 30 Am.St. Rep. 301, 15 L.R.A. 652]; *Roebling's Sons Co.* v. *Nebraska Electric Co.,* 106 Neb. 255 [183 N.W. 546]; *Hughes* v. *Lambertville Electric Light etc. Co.,* 53 N.J.Eq. 435 [32 A. 69]; *Dreisbach* v. *Ross,* 195 Pa. 278 [45 A. 722]; *National Foundry & Pipe Works* v. *Oconto etc. Water Co.,* 52 F. 43; *Stearns Lighting & Power Co.* v. *Central Trust Co.,* 223 F. 962 [139 C.C.A. 442]. Thus, the fact in the present case that the water pipes and mains were laid in various streets and alleys will not change their character or make them any the less an appurtenance to the mentioned Ealey premises. The record herein does not touch in any way upon Ealey's authority— either affirmatively or negatively—for so laying the piping system in the tract in question. However, his ownership of the system as originally installed was in nowise disputed, and it must be assumed that the distributing appendages were rightfully laid as essential parts of the entire enterprise.

Similarly, where questions as to the property characteristics of a water distributing system have arisen in connection with tax assessment problems, the courts have declared the pipes, mains and hydrants of a water company to be appurtenant to and taxable with the real estate where the main works are located. (*Pasadena* v. *County of Los Angeles,* 182 Cal. 171 [187 P. 418]; *Oskaloosa Water Co.* v. *Board of Equalization of Oskaloosa City,* 84 Iowa 407 [51 N.W. 18, 15 L.R.A. 296]; *State ex rel. Sedalia Water Co.* v. *Harnsberger,* 322 Mo. 94 [14 S.W.2d 554]; *Joplin Waterworks Co.* v. *Jasper County,* 327 Mo. 964 [38 S.W.2d 1068].) Thus, in the Sedalia Water Company case the matter is discussed as follows (322 Mo. 105): "In this case the water mains in the

streets of Sedalia are practically worthless considered as personal property, separated from the soil. They are *'necessary to the full enjoyment of the property.'* The plant located upon the land of the relator [water company] would be absolutely worthless without the pipes and the pipes would be worthless without the plant which supplies them with water. They are appurtenant. 'An appurtenance is a thing used with and related to or dependent upon something else which is its principal.' [Words and Phrases.] There could be no case in which one thing is more completely dependent upon another for its value and utility than the water mains are dependent upon the plant which supplies them with water.''

Thus upon both reason and authority the water distributing system here in question was appurtenant to the Ealey lots upon which the pumping works were located. ▮ As a general rule, a conveyance of property carries with it by implication all incidents rightfully belonging to, and essential to the full enjoyment of, such property at the time of conveyance. (26 C.J.S. § 106, p. 386, et seq.) In this state, under authority of section 1084 of the Civil Code, incidents and appurtenances to lands pass with a transfer thereof unless expressly excepted. (9 Cal.Jur. § 152, p. 286.) ▮ That the plaintiff and Ealey in executing the deed of trust here involved, intended the appurtenances to Ealey's lots to be encumbered under the terms of that instrument is manifest from the specific inclusion therein of ''all appurtenances . . . benefiting the property herein described.'' There was no need for direct reference to the water piping system in order to have it covered by the language of said deed of trust, and Ealey's subsequent property negotiations with the defendants could not affect the plaintiff's rights established under the security instrument. The propriety of the plaintiff's claim here is emphasized when considered in relation to the legal principles applied in the disposition of the case of *Harper* v. *Buckles,* 19 Cal.App.2d 481 [65 P.2d 947], an action to quiet title to all water rights and pumping equipment appurtenant to real property claimed through first and second encumbrances upon the land. No part of the water system there in question had been constructed at the date of the first deed of trust, but a considerable portion of it was built between that time and the date of the second deed of trust. For a recitation of the rules of law governing such factual situation the court referred to the case of *Stanislaus Water Co.* v. *Bach-*

*man,* 152 Cal. 716 [93 P. 858, 15 L.R.A.N.S. 359] and quoted therefrom as follows (19 Cal.App.2d 484-485):

" 'The rights of Bachman under the agreement are the same as those of Threlfall.

" 'It is immaterial that the mortgages of Threlfall's land, under which Bachman acquired title, were executed before Threlfall obtained the water-right. The water-right, when acquired, became an easement appurtenant to the land (*Farmer* v. *Ukiah Water Co.,* 56 Cal. 11, 13) and passed with it, upon the foreclosure sale in the same manner as any other appurtenance or fixture passes with the title and possession of land: (Civ. Code, secs. 1084, 1104; *Cave* v. *Crafts,* 53 Cal. 135, 140; *Farmer* v. *Ukiah Water Co.,* 56 Cal. 11, 13; *Cross* v. *Kitts,* 69 Cal. 217, 221 [10 P. 409, 58 Am.Rep. 558]; *Smith* v. *Corbit,* 116 Cal. 587, 591 [48 P. 725].) It was an incident of the land and would pass as such by a conveyance of the land, without express mention and without any reference thereto, such as by the use of the word "appurtenances" or otherwise. A conveyance of land upon a foreclosure sale must, of necessity, at least as between the parties to the mortgage, carry with it a water-right appurtenant to the land acquired and used by the mortgagor for the benefit of the land, although obtained after the execution of the mortgage and before the sale on foreclosure. We are cited to no authority for or against this proposition, and have not succeeded in finding any relating to it, but from the nature of the case it must be correct. Fixtures subsequently attached to mortgaged land pass to the purchaser at foreclosure sale, although not mentioned or referred to in the mortgage. (*Merritt* v. *Judd,* 14 Cal. 59, 72; 2 Jones on Mortgages, sec. 1657; 1 Am. & Eng. Ency. of Law, 255.) The same rule applies to improvements made by the mortgagor on mortgaged land. (1 Jones on Mortgages, secs. 147, 681; *Union Water Co.* v. *Murphy's Flat F. Co.,* 22 Cal. 620, 631; *Tibbetts* v. *Moore,* 23 Cal. 208, 215.) We are unable to perceive any material difference in principle, in this respect, between fixtures and improvements attached to or erected upon land, and a water-right attached to land as an appurtenance, such as that here involved, and we hold that it is governed by the same rules.' "

The Harper opinion then continues (19 Cal.App.2d 486): "When we apply the principles thus announced to the facts of the instant case the conclusion follows that the water sys-

tem constructed between the dates of the first and second deeds of trust became appurtenant to the land and became incumbered by the first deed of trust. It follows that as an appurtenance to the land, title passed to defendant at the time of the trustee's sale, and the execution of the trustee's deed to him as the lien of the first trust deed was prior and superior to the lien of the second.''

Here, in contrast to the factual situation prevailing in the Stanislaus and Harper cases, *supra*, the water system in question was in place and functioning as a valuable adjunct to the Ealey premises when the deed of trust was executed by Ealey and the plaintiff. Upon the basis of legal principles governing the passage of title to *appurtenances* under a conveyance of the land, there would seem to be no practical difference between a piping system constructed to convey water to said land for use thereon and a piping system installed to convey water from said land, as part of the mechanical apparatus located on the premises. In either event the piping system is incident to and necessary to the beneficial enjoyment of the land so as to follow a transfer of the realty unless expressly excepted. In the light of this reasoning the conclusion is inescapable that the water distributing system here in question was covered by the plaintiff's deed of trust on the Ealey lots; that her title to the encumbered property was established by her purchase at the trustee's sale; and that the defendants were properly directed by the trial court to reconnect said piping system to the pumping works on said lots and to render an accounting to the plaintiff as specified in the judgment.

Nor is the plaintiff's position assailable upon the ground that the water system as maintained by Ealey was a public utility and subject to the order of the Railroad Commission, which admittedly did not authorize the security arrangements made with respect to the Ealey premises. Whether or not a water system is a public utility depends on the character of the business. (*Van Hoosear* v. *Railroad Commission*, 184 Cal. 553, 555 [194 P. 1003].) The trial court, in rendering a judgment in favor of the plaintiff, impliedly found from the meager evidence on the issue that Ealey's operation of his water plant for the purpose of supplying water to his neighbors in the residential tract did not establish its dedication to a public use, and therefore any property negotiations affecting such water system was wholly a matter for private contract and of no concern to the Rail-

road Commission. The record is entirely consistent with such conclusion. The mere fact that a person furnishes within a limited area a portion of his water supply to a certain number of consumers, each individually receiving the use and benefit of the same and paying an agreed sum as a monthly rate, does not of itself prove the waterworks to be a public utility. While such conduct shows the enterprise to be a business proposition, rather than a mere accommodation or a neighborly act, in the sense that there is a monetary consideration for the service, it does not necessarily establish a dedication of property to public use. (*Richardson* v. *Railroad Commission,* 191 Cal. 716, 721 [218 P. 418]; *Klatt* v. *Railroad Commission,* 192 Cal. 689, 701 [221 P. 926].) " 'To hold that property has been dedicated to a public use is "not a trivial thing" (*San Francisco* v. *Grote,* 120 Cal. [59] 60 [65 Am.St.Rep. 155, 41 L.R.A. 335, 52 P. 127]), and such dedication is never presumed "without evidence of unequivocal intention." (*Niles* v. *City of Los Angeles,* 125 Cal. 572 [58 P. 190].) . . .' " (*Allen* v. *Railroad Commission,* 179 Cal. 68, 85 [175 P. 466, 8 A.L.R. 249].) In the condition of the evidence as hereinabove outlined, the trial court's determination of the point in the plaintiff's favor is not open to attack.

Turning now to the attempted appeal from the judgment in favor of the cross-defendant Ealey, the following facts appear from the record. A cross-complaint was filed against Ealey and he was brought into the action as a cross-defendant by permission of the court. On January 15, 1942, in the course of the trial, the court made an order striking the cross-complaint from the files. The judgment was rendered on May 11, 1942, and it contains by way of recital only the statement "the cross-complaint having been stricken from the files upon motion of the cross-defendant." Notice of appeal was filed on July 17, 1942, and it purports to appeal only from the judgment entered on May 11, 1942.

The order of January 15, 1942, striking the cross-complaint from the files was as to Ealey the cross-defendant, not otherwise a party to the action, a final and appealable judgment. (*Howe* v. *Key System Transit Co.,* 198 Cal. 525 [246 P. 39]; *Young* v. *Superior Court,* 16 Cal.2d 211 [105 P.2d 363]; *Halterman* v. *Pacific Gas & Elec. Co.,* 22 Cal.App.2d 592 [71 P.2d 855].) The notice of appeal, even if liberally construed

as an attempt to appeal from the order of January 15, 1942, was filed too late. (Code Civ. Proc., § 939.)

The attempted appeal as to the cross-defendant Ealey is dismissed. The judgment in favor of the plaintiff is affirmed.

Gibson, C. J., Shenk, J., Edmonds, J., Carter, J., Traynor, J., and Schauer, J., concurred.