Filed 3/18/14  Lounsbury v. Bank of America CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| JOHN PETER LOUNSBURY, | |
| Plaintiff and Appellant, | E055010 |
| v. | (Super.Ct.No. CIVVS1000946) |
| BANK OF AMERICA, N.A. et al., | OPINION |
| Defendants and Respondents. | |

APPEAL from the Superior Court of San Bernardino County.  Gilbert G. Ochoa, Judge.  Affirmed.

Caufield & James, Jeffery L. Caufield and Santino M. Tropea for Plaintiff and Appellant.

AlvaradoSmith, Thierry R. Montoya and Gregory G. Snarr for Defendants and Respondents.

Plaintiff John Peter Lounsbury (Mr. Lounsbury) appeals the judgment entered after the trial court granted summary adjudication in favor of defendants Bank of America, N.A. (BofA), JPMorgan Chase Bank (Chase) and California Reconveyance

1

Company (CRC) and dismissed Mr. Lounsbury from the underlying action for lack of standing.  We affirm.

## I.  PROCEDURAL BACKGROUND AND FACTS

Prior to December 5, 2002, Mr. Lounsbury jointly owned the real property located at 14499 Robinson Road, Oro Grande, California (the Property) with his wife, Carolyn Lounsbury (Mrs. Lounsbury).  The Property was subject to the stipulated judgment entered on January 10, 1996, in *City of Barstow*, *et al. v. City of Adelanto et al.* Riverside County Superior Court case No. 208568 (Stipulated Judgment).  That case intended to resolve water supply problems resulting from a cumulative increase in water use in the upper part of the Mojave Basin, which had caused and/or threatened to cause a reduction in the natural flow of water to the central part of the Mojave Basin.  The court relied on principles of equitable apportionment in assigning pumping rights known as "base annual production" rights (BAP rights)—a yearly free water allowance calculation based on the producer's prior, maximum annual production for the five year period from 1986 to 1990. (*City of Barstow v. Mojave Water Agency* (2000) 23 Cal.4th 1224, 1235 (*Mojave*).)  The BAP rights represent an amount of water that can be pumped free of assessment each year, as well as the amount that can be sold, leased, or otherwise transferred.  Any party who received BAP rights under the Stipulated Judgment is allowed to pump water for free on any property up to the allotted amount, but must pay for any water pumped in excess thereof.

Pursuant to the Stipulated Judgment, the Riverside County Superior Court appointed a "special master," also referred to as the Mojave Basin "Watermaster," to

2

implement the Judgment and oversee all aspects of BAP rights. The Watermaster was empowered with the duty of approving and recording all transfers, sales, leases and changes in ownership of BAP rights. By virtue of their ownership of the Property, along with other properties, Mr. and Mrs. Lounsbury were granted 208 acre-feet of BAP rights as reflected in Table B-1 attached to the Stipulated Judgment. Beginning in 1995, they leased their BAP rights each year as their primary source of income.

On November 19, 2002, the Lounsburys conveyed the Property to the Lounsbury Family Living Trust. There is no recorded document which indicates they severed the Property's BAP rights or that the BAP rights were reserved to themselves. On March 23, 2004, the trust conveyed the Property back to the Lounsburys, as joint tenants. Again, there is no recorded document severing the BAP rights from the land. On July 28, 2006, Mr. Lounsbury conveyed all of his interest in the Property by Interspousal Transfer Grant Deed to Mrs. Lounsbury as her sole and separate property. Once again, there is no recorded document indicating that Mr. Lounsbury reserved to himself any of the Property's BAP rights.

Less than one year after owning the Property as her sole and separate property, Mrs. Lounsbury obtained a $465,000 loan (the Loan) secured by a deed of trust, which was recorded on or about April 4, 2007. The deed of trust was later assigned to "LaSalle Bank NA as trustee for WaMu Mortgage Pass-Through Certificates Series 2007-OA5 Trust." Thereafter, Mrs. Lounsbury admittedly failed to make all payments on the Loan. A notice of default was recorded on or about December 11, 2008, and a notice of trustee's sale concerning the deed of trust was recorded on or about March 17, 2009. The

3

amount of unpaid balance and other charges in March 2009 equaled approximately $510,564.

A trustee's deed upon sale granting title to the Property to BofA (as successor by merger to LaSalle Bank NA, as trustee for WaMu Mortgage Pass-Through Certificates Series 2007-OA5 Trust) was recorded on or about May 22, 2009.  Neither Mr. Lounsbury nor Mrs. Lounsbury challenged the nonjudicial foreclosure sale.  Thus, via a valid nonjudicial foreclosure sale, BofA became the owner of the Property.

On February 16, 2010, Mr. and Mrs. Lounsbury filed a verified complaint alleging quiet title, declaratory relief, intentional misrepresentation, negligent misrepresentation, fraud by concealment, slander of title, intentional interference with prospective economic advantage, negligent interference with prospective economic advantage, unfair business practices, equitable action to set aside trustee sale, and equitable action for cancellation of trustee's deed.  They sought "a judicial determination and declaration that they are the true and rightful owners of the [BAP rights], and that these separate [BAP rights] were not taken from [them] by any Defendants as a result of a subsequent foreclosure action on the [Property] or another other transaction."

In February 2011, defendants moved for summary judgment, or in the alternative, summary adjudication, as to all of Mr. Lounsbury's claims on the ground that he lacked standing.[1]  Approximately one month later, Mr. Lounsbury filed a motion for summary

---

[1] While defendants' motion also sought judgment against Mrs. Lounsbury, the trial court denied the motion, granting summary adjudication as to only a few of her causes of action, and thus, Mrs. Lounsbury's complaint against defendants remains

*[footnote continued on next page]*

4

adjudication as to his quiet title cause of action. At the hearing, the trial court framed the issue in this case as being whether the BAP rights "were included within that foreclosure or not." After considering the evidence before the court, it concluded that Mr. Lounsbury lacked standing and thus dismissed him from the case. Simultaneously, the trial court denied Mr. Lounsbury's motion for summary adjudication in its entirety. The court also denied his subsequent motion for reconsideration.

On appeal, Mr. Lounsbury solely challenges the trial court's decision to dismiss him from the underlying action due to a lack of standing. He contends the trial court erred in granting to BofA the Lounsburys' BAP rights pursuant to the foreclosure sale; in holding that the BAP rights transferred with the Property despite the Stipulated Judgment; and in disregarding the official records of ownership of the BAP rights. He further contends the trial court erred in holding that the ownership of the BAP rights, a community property asset, was conveyed pursuant to the foreclosure on Mrs. Lounsbury's sole and separate property. Regardless of the issues raised by Mr. Lounsbury, the main issue that resolves the issue of standing is whether he possessed any interest in the Property after he transferred all such rights to his wife as her sole and separate property. He claims that he did, because he continued to own the BAP rights with his wife. Defendants disagree.

---

*[footnote continued from previous page]*
viable. The case is final as to Mr. Lounsbury only. Accordingly, this opinion addresses only the issues involving Mr. Lounsbury and will limit any reference to Mrs. Lounsbury to an as-needed basis.

## II.  STANDARD OF REVIEW

We review questions of law as well as orders granting summary adjudication under the de novo standard of review.  (*Aguilar v. Atlantic Richfield Co*. (2001) 25 Cal.4th 826, 860.)

## III.  OWNERSHIP OF BAP RIGHTS

Resolution of this appeal depends on the ownership of the BAP rights.  We begin with an overview of water rights law.

### A.  Applicable Law

"Courts typically classify water rights in an underground basin as overlying, appropriative, or prescriptive.  [Citation.]  An overlying right, 'analogous to that of the riparian owner in a surface stream, is the owner's right to take water from the ground underneath for use on his land within the basin or watershed; it is based on the ownership of the land and is appurtenant thereto.'  [Citation.]  One with overlying rights has rights superior to that of other persons who lack legal priority, but is nonetheless restricted to a reasonable beneficial use.  Thus, after first considering this priority, courts may limit it to present and prospective reasonable beneficial uses, consonant with article X, section 2 of the California Constitution.  [Citation.]"  (*Mojave*, *supra*, 23 Cal.4th at p. 1240.)

The established law in California is that "once . . . water rights are acquired, they become appurtenant to the land. . . .  '"The right to water must be treated in this state as it has always been treated, as a right running with the land and as a corporeal privilege bestowed upon the occupier or appropriator of the soil; and as such, has none of the characteristics of mere personalty." [Citation.] . . .'"  (*Nicoll v. Rudnick* (2008) 160

6

Cal.App.4th 550, 558; see also *Schimmel v. Martin* (1923) 190 Cal. 429, 432 [water right considered an interest in real property]; Civ. Code, § 658 [real property includes "[t]hat which is incidental or appurtenant to land"].) As such, the right to water passes by grant of the land. (*Lux v. Haggin* (1886) 69 Cal. 255, 390-392.)

**B. Analysis**

Turning to the case before this court, the Property is located in the Mojave Basin. Beginning in 1990, litigation was initiated regarding the overdraft of the Mojave Basin. (*Mojave*, *supra*, 23 Cal.4th at p. 1234.) Given the number of parties involved and the significance of the issue, a stipulated "physical solution" to the water shortage problem was reached. (*Id*. at p. 1235.) This solution resulted in BAP rights "for each party, determined by the producer's maximum annual production for the five-year period from 1986 to 1990," and not "on the basis of preexisting legal water rights." (*Ibid*.) Mr. Lounsbury claims "Ownership of BAP Rights does <u>not</u> require one to own any property in the Basin so long as reasonable use of the water is made." (Original underscore.) However, "a physical solution is generally a practical remedy that does not affect vested rights." (*Id*. at p. 1250.) Thus, in order to obtain BAP rights, a party had to possess an interest in the real property associated with such rights and was identified as "water producers" or "water users." (*Id*. at pp. 1234-1235.) The *sole reason* for the equitable apportionment of their water rights was because the river basin was in overdraft and there was a need to manage the water supply (*id*. at p. 1237), not "eliminate vested rights." (*Id*. at p. 1250.)

7

After establishing a physical solution to the overdraft of the Mojave Basin, the court appointed a Watermaster to manage the use and quantity of water in the basin. (*See e.g.*, *Central and West Basin Water Replenishment Dist. v. Southern Cal. Water Co.* (2003) 109 Cal.App.4th 891, 899.) The Watermaster is charged with the duty of "maintain[ing] a report or record of any transfer of [BAP] Rights." According to Mr. Lounsbury, beginning in 1995, he and his wife leased their BAP rights (to Victor Valley Water District, Apple Valley Ranchos Water Company, and Helendale Community Services District) each year as their primary source of income, and none of their BAP rights were used on any property owned by them. The Watermaster's Annual Reports continuously reflected "Peter and Carolyn Lounsbury" as community property "owners" of the BAP rights.

Citing the Rules and Regulations of the Mojave Basin Area Watermaster (Rules and Regulations), Mr. Lounsbury contends that "no sale, lease or other transfer of BAP rights is 'operable' unless parties seeking to transfer such rights file with the Watermaster a copy of the appropriate transfer documents and the transfer is approved in writing." He acknowledges that "[a]t no time over the last seventeen years did [they] seek to transfer ownership of the BAP Rights in connection with any of their properties in the Basin nor did the Watermaster approve any transfer." However, eight months prior to Mrs. Lounsbury obtaining the Loan, Mr. Lounsbury conveyed all of his interest in the Property by Interspousal Transfer Grant Deed to Mrs. Lounsbury as her sole and separate property. Thus, in 2007, she obtained the Loan secured by a deed of trust on the Property, as her "sole and separate" property. Mr. Lounsbury contends that the BAP

8

rights were excluded as security for the Loan and that when Mrs. Lounsbury failed to make payments on the Loan, resulting in the Property being foreclosed upon, BofA became the owner of the Property without the BAP rights. Accordingly, the primary issue to be resolved in this appeal is who owns the BAP rights to the Property.

We conclude that Mr. Lounsbury has no ownership interest in the BAP rights associated with the Property for the following reasons. First, as defendants correctly point out, the Stipulated Judgment did not sever the Property water rights from the land. Judge E. Michael Kaiser recognized this on November 22, 1996, when he was asked to clarify the judgment that created the BAP rights. Specifically when asked whether the BAP rights were to be considered personal property, Judge Kaiser stated, "I don't know that I would address the issue that way. The only thing I can indicate from reading the judgment and having written the judgment, I always understood that water rights are considered to be rights in real property. Whether they're riparian, overlying, or appropriative rights, they are an interest in real property. Adjudication did not sever water rights from the land." He later added that "water rights are apertinent [*sic*] to and connected with the land unless they are severed, and they were not severed in the judgment."

Second, Mr. Lounsbury claims that by participating in the solution and signing the Stipulated Judgment, BofA may not assert its "BAP Rights are traditional overlying water rights that run with the land," or "contest the transfer mechanisms governing BAP Rights." This contention is misplaced. As defendants point out, BofA's stipulation to the judgment was as the owner of another piece of property, not the Property. More

9

importantly, as we have already stated, no water rights were severed from the real property.

Finally, looking at the Rules and Regulations, we note they also address the situation of permanent transfers of BAP rights. The transfers between Mr. and Mrs. Lounsbury and their trust never resulted in the transfer of the Property away from them or for their benefit. The BAP rights are attached to the Property. In order to permanently transfer the BAP rights with or without the Property, Mr. Lounsbury was required to "accurately recite the amount of Transferor's [BAP] Right to be transferred and the total price to be paid by the Transferee(s)." Furthermore, "[p]ermanent Transfers are executed by both Transferee(s) and Transferor(s)." When a permanent transfer is to be executed, "[a]t least thirty (30) days prior to filing with Watermaster any proposed permanent transfer of a [BAP] Right, *the proposed Transferor shall provide written notice* by certified mail (with return receipt requested) *of the proposed transfer to any party with a recorded security interest, deed of trust or a lien in such real property . . . .* A list of those so notified shall be provided to the Watermaster together with copies of the notice and return receipts. A Preliminary Title Report on seller's property shall also be provided to the Watermaster for permanent transfers. If a real estate sale is completed prior to notification to Watermaster of the proposed permanent transfer, the Transferee shall provide Watermaster with a copy of the recorded Deed and a Title Insurance Policy showing ownership of the land associated with the [BAP] Right." (Italics added.) This language acknowledges the fact that some properties may be subject to mortgages and

10

contemplates the need to alert the lienholder of the intent to transfer the BAP rights associated with the properties. In other words, it protects the lienholder's interests.

According to the record before this court, the Lounsburys never took any action to transfer the BAP rights apart from the Property. Thus, when Mrs. Lounsbury encumbered the Property with the Loan secured by the deed of trust, the BAP rights remained appurtenant to the Property. In the absence of an express reservation, a mortgage or any transfer of land also conveys a water right appurtenant to the land along with the easements necessary for its enjoyment. (*Stanislaus Water Co. v. Bachman* (1908) 152 Cal. 716, 724 ["Fixtures subsequently attached to mortgaged land pass to the purchaser at foreclosure sale, although not mentioned or referred to in the mortgage. [Citations.] The same rule applies to improvements made by the mortgagor on mortgaged land. [Citations.] We are unable to perceive any material difference in principle, in this respect, between fixtures and improvements attached to or erected upon land, and a water-right attached to land as an appurtenance . . . ."].) Thus, when a property owner who holds water rights chooses to mortgage his or her property without any reservation of the water rights, if the mortgage is foreclosed, the foreclosure sale conveys the water rights. (*Ibid*.; see *Trask v. Moore* (1944) 24 Cal.2d 365, 371.) Here, when Mr. Lounsbury conveyed all of his interest in the Property by Interspousal Transfer Grant Deed to Mrs. Lounsbury as her sole and separate property, this conveyance included his BAP rights. The fact that she failed to notify the Watermaster of the conveyance is irrelevant because the grant deed controls. (*Stanislaus Water Co. v. Bachman*, *supra*, at p. 724.)

11

For the above reasons, we conclude that Mr. Lounsbury has no ownership interest in the BAP rights associated with the Property.

## IV.  STANDING

It is undisputed that on July 28, 2006, Mr. Lounsbury conveyed all of his interest in the Property by Interspousal Transfer Grant Deed to Mrs. Lounsbury as her sole and separate property.  We have determined that he has no ownership interest in the BAP rights.  Accordingly, it follows that he lacks standing in this action.

Code of Civil Procedure section 367 requires that "'[e]very action must  be prosecuted in the name of the real party in interest, except as otherwise provided by statute.'"  A real party in interest "'is the owner of the cause of action,'" that is, "'the person possessing the right sued upon by reason of the substantive law. . . .'"  (*Windham at Carmel Mountain Ranch Assn. v. Superior Court* (2003) 109 Cal.App.4th 1162, 1172-1173.)  Because we have concluded that Mr. Lounsbury has no ownership interest in the Property or its accompanying BAP rights, it follows that he lacks standing to initiate or maintain this action against defendants.[2]

---

[2] Without standing, Mr. Lounsbury is precluded from challenging the nonjudicial foreclosure sale of the Property as unlawful due to defendants' failure to provide notice. In any event, defendants note that neither Mr. Lounsbury nor Mrs. Lounsbury challenged the foreclosure in the first amended complaint.

## V.  DISPOSITION

The judgment is affirmed.  Costs on appeal shall be awarded to Bank of America

N.A.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS


                                                  HOLLENHORST

                                                      Acting P. J.

We concur:

MCKINSTER
                       J.

RICHLI
                       J.