DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**BLOK BUILDERS, LLC** d/b/a **IKON BUILDERS,** a Florida limited
liability company,
Appella

nt, v.

**PEDRO KATRYNIOK, MASTEC NORTH AMERICA, INC.,** a Florida
corporation, and **BELLSOUTH TELECOMMUNICATIONS, LLC,**
d/b/a **AT&T FLORIDA,**
Appellees.

No. 4D16-1811

[April 25, 2018]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit,
Broward County; Dale Ross, Judge; L.T. Case No. CACE10-43490 (08).

Caryn L. Bellus and Barbara E. Fox of Kubicki Draper, P.A., Miami,
for appellant.

Kimberly Kanoff Berman of McIntosh Sawran & Cartaya, P.A., Fort
Lauderdale, and Michael J. Lynott and Crystal L. Arocha of McIntosh
Sawran & Cartaya, P.A., Miami, for appellees MasTec North America, Inc.
and BellSouth Telecommunications, LLC.

### ON MOTION FOR CLARIFICATION, REHEARING AND/OR REHEARING EN BANC

WARNER, J.

We deny Appellant's Motion for Clarification, Rehearing and/or
Rehearing En Banc, withdraw the previous opinion and substitute the
following opinion in its place.

Blok Builders, LLC, appeals a final judgment determining that Blok
owes Mastec North America, Inc., and BellSouth Telecommunications,
LLC, contractual indemnity and a defense in a personal injury action, as
well as awarding attorney's fees. Blok contends that its subcontract with

1

Mastec, which required Blok to indemnify Mastec for its own negligence, did not comply with section 725.06, Florida Statutes (2008), and, thus, its contractual indemnification provisions were unenforceable. The statute, however, does not apply to the contract in this case; therefore, the trial court correctly determined that Blok owed Mastec a duty to indemnify and defend. The trial court also found that Blok must indemnify BellSouth, but neither the contract between Blok and Mastec nor the contract between Mastec and BellSouth requires Blok to indemnify BellSouth. We therefore reverse the trial court's final judgment as to BellSouth.

BellSouth sought to improve its telecommunications services by accessing and altering its network in a project called "Lightspeed Project." As part of the project, it contracted with Mastec to perform all work necessary to provide access to the underground lines located in neighborhood easements. In turn, Mastec then subcontracted with Blok to perform the excavation work necessary for BellSouth to access its previously existing underground utility lines.

After Blok performed excavation near the driveway in one of the neighborhoods covered by the project, a homeowner was walking down his driveway when it suddenly collapsed, causing him to fall and sustain permanent serious injuries. The homeowner sued Blok for damages due to his injuries and then amended his complaint to add Mastec and BellSouth for their own negligence in contributing to the dangerous condition.

Mastec and BellSouth crossclaimed against Blok, alleging that Blok had agreed to contractually indemnify them through the subcontract between Blok and Mastec. The contract between Blok and Mastec contained a provision requiring Blok to indemnify Mastec for Mastec's own negligence:

> 16. Indemnification. a) **Subcontractor [Blok] agrees to indemnify and hold harmless Contractor [Mastec] and its directors, officers, employees and agents (collectively the "Indemnitees")** and each of them from and against any loss, costs, damages, claims, expenses (including attorneys' fees) or liabilities, causes of action, lawsuits, penalties, or demands (collectively referred to as "Liabilities") by reason of any injury to or death of any person or damage to or destruction or loss of any property arising out of, resulting from, or in connection with (i) the performance or nonperformance of the Work contemplated by this Agreement which is or is alleged to be

2

directly or indirectly caused, in whole or in part, by any act, omission, default, negligence (whether active or passive) of Subcontractor or its employees, agents or subcontractors, **regardless of whether it is, or is alleged to be, caused in whole or part (whether joint, concurrent, or contributing) by any act, omission, default or negligence (whether active or passive) of the indemnitees, or any of them** . . . Said indemnity shall include but not be limited to injury or damage which is or is alleged to be caused in whole or in part by any act, omission, default or negligence of Subcontractor or its employees, agents or subcontractors. . . .

c) Where not specifically prohibited by law, **Subcontractor further specifically agrees to indemnify and hold harmless the Indemnitees from all Liabilities**, by reason of any injury, death, or damage to any person or property whatsoever, **caused by, arising from, incident to, or connected with the performance or nonperformance of the work contemplated by this Agreement which is, or is alleged to be, caused in part** (whether joint, concurrent, or contributing) **or in whole by any act, omission, default, or negligence (whether active or passive) of the Indemnitees**.

 (emphasis added).

The contract further required Blok to defend any claim arising out of the performance of the contract and brought against the Indemnitees, as well as to pay any costs and attorney's fees incurred by the Indemnitees in defending any action or in enforcing the indemnification agreement.

The agreement between Blok and Mastec incorporated the terms of the contract between Mastec and BellSouth. That agreement contained a similar indemnification provision requiring Mastec to indemnify BellSouth:

Article 9. Indemnity

The **Contractor [Mastec] shall indemnify and hold harmless the Company [BellSouth]** and its directors, officers, employees and agents (**collectively the "Indemnitees"**) and each of them **from and against any loss, costs, damages, claims, expenses (including attorneys' fees)** or liabilities (collectively referred to as "Liabilities") by reason of any injury to or death of any person or damage to or

3

destruction or loss of any property arising out of, resulting from, or in connection with (i) the performance or nonperformance of the work contemplated by this Contract which is or is alleged to be directly or indirectly caused, in whole or in part, by any act, omission, default, negligence (whether active or passive) of Contractor or its employees, agents or subcontractors, regardless of whether it is, or is alleged to be, caused in whole or part (whether joint, concurrent or contributing) by any act, omission, default or negligence (whether active or passive) of the Indemnitees, or any of them . . . .

(emphasis added).

Blok contended that the indemnification provisions were invalid because the contract did not comply with section 725.06, Florida Statutes (2008). The statute applies to certain construction contracts which obligate the indemnitor to indemnify the indemnitee for the indemnitee's own negligence. Such a contract is unenforceable unless it contains a monetary limitation on the extent of such liability. Blok contended that because there was no such limitation in the Blok/Mastec contract, the indemnification provision was void and unenforceable. Mastec and BellSouth argued that section 725.06 did not apply to this contract, and in any case, a monetary limitation was contained in the BellSouth/Mastec contract which, through an incorporation clause, applied to the Blok/Mastec contract.

Both sides moved for summary judgment. Ultimately, the trial court entered summary judgment in favor of Mastec and BellSouth, concluding that the contracts required Blok to indemnify and defend both Mastec and BellSouth in the underlying personal injury lawsuit. It also entered an award of attorney's fees to both Mastec and BellSouth. Blok appeals this final judgment.

We review de novo a summary judgment. *Overseas Inv. Group v. Wall St. Electronica, Inc.*, 181 So. 3d 1288, 1291 (Fla. 4th DCA 2016) (citing *Volusia Cty. v. Aberdeen at Ormond Beach, L.P.*, 760 So. 2d 126, 130 (Fla. 2000)). De novo review applies to the interpretation of a contract. *See Royal Palm Hotel Prop., LLC v. Deutsche Lufthansa Aktiengesellschaft, Inc.*, 133 So. 3d 1108, 1110 (Fla. 3d DCA 2014). It also applies to the interpretation of a statute. *See Toler v. Bank of America, Nat'l Ass'n*, 78 So. 3d 699, 701-02 (Fla. 4th DCA 2012).

Blok argues that section 725.06, Florida Statutes, applies to its contract, and because the contract contains no monetary limitation on its obligation to indemnify Mastec for Mastec's own negligence, the indemnification provision is unenforceable. Based upon the plain wording of the statute, however, we conclude that section 725.06 does not apply to this contract.

Section 725.06(1) covers contracts for construction as follows:

> Any portion of any agreement or contract for or in connection with, or any guarantee of or in connection with, **any construction, alteration, repair, or demolition of a building, structure, appurtenance, or appliance, including moving and excavating associated therewith** . . . shall be void and unenforceable unless the contract contains a monetary limitation on the extent of the indemnification that bears a reasonable commercial relationship to the contract and is part of the project specifications or bid documents, if any.

(emphasis added).

Where a statute is clear and unambiguous, the words of the statute must be given their plain and obvious meaning. *Holly v. Auld*, 450 So. 2d 217, 219 (Fla. 1984) (quoting *A.R. Douglass, Inc. v. McRainey*, 102 Fla. 1141, 1144, 137 So. 157, 159 (1931)). Further, a court is "without power to construe an unambiguous statute in a way which would extend, modify, or limit, its express terms or its reasonable and obvious implications. To do so would be an abrogation of legislative power." *Id.* (emphasis removed) (quoting *Am. Bankers Life Assurance Co. of Fla. v. Williams*, 212 So. 2d 777, 778 (Fla. 1st DCA 1968)).

Blok contends that because it entered into a contract for excavation, the statute governs. Excavation, however, must be associated with the "construction, alteration, repair, or demolition of a **building, structure, appurtenance, or appliance** . . . ." § 725.06(1), Fla. Stat. (2008) (emphasis added). The project in this case did not involve such construction. The master contract between BellSouth and Mastec involved the laying and maintenance of utility lines. The contract does not involve a building, structure, appurtenance,[1] or appliance. Therefore, given its plain and

---

[1] "Appurtenances are things belonging to another thing as principal and which pass as incident to the principal thing." *Chackal v. Staples*, 991 So. 2d 949, 955

5

ordinary meaning, the statute does not govern the contractual provisions.

Blok cites several cases in which section 725.06 has been applied, but all involve either the construction of a building or structure. It relies most heavily on *Camp, Dresser & McKee, Inc. v. Paul N. Howard Co.*, 721 So. 2d 1254 (Fla. 5th DCA 1998), in which the statute was applied to the construction of concrete tunnels. But it is clear from the opinion that the court considered the concrete tunnel to be a "structure," and thus, the statute was applicable. Similarly, in *Griswold Ready Mix Concrete, Inc. v. Reddick*, 134 So. 3d 985, 986 (Fla. 1st DCA 2012), the statute was applied to a contract for a lease of a concrete pump truck, as the truck was being used in the laying of a foundation of a building, which type of contract is covered by the statute.

Mastec suggests that section 725.06 does not apply to utility contracts, which are quasi-governmental. In particular, it cites to *Church & Tower of Fla., Inc. v. BellSouth Telecomm., Inc.*, 936 So. 2d 40 (Fla. 3d DCA 2006), which involved a contract with a similar indemnity provision as in this case. The contract in question provided for the installation of utility poles, and the court enforced the indemnity provision but never addressed section 725.06. Mastec and BellSouth suggest that this is because it is a utility contract, and section 725.06 does not apply to utility contracts. Blok, however, has provided us the briefs of that case, and it appears from the argument that neither party argued the application of section 725.06. Thus, we do not decide this case on the basis that section 725.06 can never apply to a contract with a utility.

As to BellSouth, we conclude that the court erred in determining that Blok owed a duty of indemnity and a duty to defend BellSouth. Under the Blok/Mastec contract, Blok agreed to indemnify Mastec and its directors, officers, and agents. Nowhere does it require Blok to indemnify BellSouth. And, although the subcontract incorporated the provisions of the BellSouth/Mastec contract, that contractual indemnification provision required that Mastec, not its subcontractors, indemnify BellSouth. Where a contract is clear and unambiguous, "courts cannot indulge in construction or interpretation of its plain meaning." *BMW of North America, Inc. v. Krathen*, 471 So. 2d 585, 587 (Fla. 4th DCA 1985) (quoting

---

(Fla. 4th DCA 2008) (quoting *Trask v. Moore*, 24 Cal. 2d 365, 368, 149 P.2d 854, 856 (1944)). While Blok suggests that these lines are appurtenances to the adjacent homes, they are not, as they would not "pass as incident to the principal thing." The lines are located in an easement and owned by BellSouth. They are not an appurtenance to the property of the homeowner.

*Hurt v. Leatherby Ins. Co.*, 380 So. 2d 432 (Fla. 1980)). And, when a contract is silent on a matter, the court cannot impose contractual rights and duties under the guise of construction. *Id.* Thus, the court erred in declaring that Blok had a duty to indemnify and to defend BellSouth.

Because Blok had no contractual duty to indemnify or defend Bell South, we also reverse the award of attorney's fees and costs as to BellSouth. In the trial court, however, one law firm represented both Mastec and BellSouth, and the trial court entered a single award of fees and costs for the joint representation. The transcript of the fee hearing does not reveal any attempt to determine whether there were fees sought solely for work done in representation of BellSouth and not joint representation. Although Blok did not object to the single award, the court had already ruled that BellSouth was entitled to indemnity and obviated the need for a separate finding with respect to BellSouth. On remand, if Blok can identify fees due solely to the representation of BellSouth, rather than Mastec, in the evidence presented at the fee hearing, the trial court should reduce the attorney's fees judgment and award to Mastec only those fees attributable to representation of Mastec or joint representation.[2] Otherwise, we find no merit in Blok's challenge to the award of attorney's fees to Mastec.

For the foregoing reasons, we affirm the trial court's final judgment determining Blok's duty to indemnify and defend Mastec. We reverse the final judgment as to BellSouth in all respects and remand for the exclusion from the award of attorney's fees to Mastec those fees solely directed to the representation of BellSouth.[3]

LEVINE, J., and BUCHANAN, LAURIE E., Associate Judge, concur.

---

[2] The vast majority of the fees and costs were for representation in defending the underlying personal injury lawsuit or pursuing a joint indemnity claim against Blok and thus are proper. There are a few entries for time spent for answering the amended complaint when BellSouth became a defendant in the litigation and preparing its own crossclaim against Blok. There might be some entries regarding individual discussions with BellSouth lawyers. It is up to Blok to show the trial court the individual hourly fee entries or cost items which it claims should be excluded. The trial court can thereafter determine whether those specific hours and costs were included in its original award and should be excluded as due solely to representation of BellSouth.

[3] Because the amount appears to be so small compared to the total award, the parties may be able to agree to any reduction and submit an agreed judgment on fees to the trial court.