DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**OVERSEAS INVESTMENT GROUP,**
Appellant,

v.

**WALL STREET ELECTRONICA, INC.** and **HERZOG, HEINE, GEDULD, INC.,**
Appellees.

No. 4D13-4310

[January 6, 2016]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Carlos A. Rodriguez, Judge; L.T. Case No. CACE07005785.

Alan F. Wagner of Wagner, Vaughan & McLaughlin, P.A., Tampa, for appellant.

Esther E. Galicia of Fowler White Burnett, P.A., Miami, and Ronald Shindler of Fowler White Burnett, P.A., Fort Lauderdale, for appellee Herzog, Heine, Geduld, Inc.

WARNER, J.

Plaintiff, Overseas Investment Group, appeals from a final summary judgment entered in favor of the defendant, Herzog, Heine, Geduld, Inc., a brokerage firm, in connection with Herzog's liquidation of Overseas's margin account. The trial court found that Herzog was not liable to Overseas for breach of contract and breach of fiduciary duty because by contract Herzog had sole discretion to liquidate the subject account for its own protection. We reverse because material issues of fact remain.

Defendant Wall Street Electronica was a securities broker-dealer. Wall Street Electronica hired Herzog to perform "back office" functions, such as clearing and settling securities transactions it had executed. Overseas, a customer of Wall Street Electronica, opened a brokerage margin account with Wall Street. Overseas was using a strategy called "selling puts naked," which involved selling stock options it did not own. It required the extension of credit by Herzog, referred to as a "margin."

As part of opening the brokerage account, Overseas's president, Dr. Samuel Elia, signed a Customer Agreement with Herzog. Section 10 of the agreement provided:

> The Customer clearly understands that, **notwithstanding a general policy of giving customers notice of a margin deficiency, Herzog is not obligated to request additional margin from the Customer in the event the Customer's Account falls below minimum maintenance requirements**. More importantly, there may be circumstances where Herzog will liquidate securities and/or other property in the Account without notice to the Customer to ensure that minimum maintenance requirements are satisfied.
>
> . . . Herzog shall have the right **in accordance with its general policies regarding margin maintenance requirements** to require additional collateral or the liquidations of any securities and other property **whenever in Herzog's discretion it considers it necessary for its protection including in the event of, but not limited to**: the failure of the Customer to promptly meet any call for additional collateral . . . . In any such event, Herzog is authorized to sell any and all securities and other property in any Account of the Customer . . . without demand for margin or additional margin, other notice of sale or purchase, or other notice or advertisement each of which is expressly waived by the Customer.

(Emphasis added). Additionally, section 11 of the agreement provided: "The Customer agrees to maintain in all accounts with Herzog such **positions and margins as required by all applicable statutes, rules, regulations, procedures and custom, or as Herzog deems necessary or advisable**. The Customer agrees to promptly satisfy all margin and maintenance calls." (Emphasis added). Dr. Elia, having executed the Customer Agreement, knew that Overseas would be required to maintain a certain level of margin with Herzog. If the Overseas account fell below the margin requirement, the company could request additional cash from Overseas or it could sell sufficient securities itself to raise the cash necessary to meet the margin requirement.

The stock market declined on April 10, 2000, and Herzog sent Overseas two margin maintenance calls requesting additional funds. Overseas asserts that it met those margin calls and was in compliance as of Friday, April 14, 2000. On Saturday, April 15, Dr. Elia received a phone call that

Overseas should expect another margin call. According to Dr. Elia, he advised Herzog that he was in full compliance, but to avoid confusion Overseas would increase its cash position by April 22. However, Overseas contends that on Monday, April 17, the market increased, and Overseas believed no additional funds would be needed. Herzog nevertheless began liquidating the Overseas accounts soon after the market opened on April 17 to satisfy the margin call. Specifically, Herzog liquidated Overseas's $1,000,000 security portfolio. This liquidation is the basis for the lawsuit.

Overseas filed suit for breach of contract, fraudulent inducement, and negligence against Herzog and Wall Street Electronica.[1] It alleged that Herzog had failed to notify it of the impending liquidation in a timely fashion. It also alleged that it had met the minimum margin requirements, even though those requirements were not set forth in the agreement. Overseas alleged that its Wall Street Electronica advisors, as well as the Herzog website, had provided the means of determining those requirements. Thus, Overseas alleged that Herzog breached the Customer Agreement by liquidating the account.

Herzog moved for summary judgment, contending that there was a dramatic downturn in the market in April 2000, and Overseas's account's equity went into a deficit. To protect itself, Herzog liquidated the account to satisfy unmet margin calls. Herzog claimed that the Customer Agreement authorized it to liquidate the account at any time, with or without notice.

Dr. Elia filed an affidavit in opposition, in which he explained Overseas's strategy with respect to options. He asserted that the Customer Agreement allowed Herzog to liquidate the account if it fell below "minimum maintenance requirements," but failed to describe what those requirements were or how they were calculated. Although the agreement required Overseas to maintain margins as required by "all applicable statutes, rules, regulations, procedures and custom, or as Herzog deems necessary or advisable[,]" it never identified the rules or statutes, or what Herzog would deem necessary or advisable. Further, Dr. Elia asserted that the agreement merely required margin calls to be satisfied "promptly," without giving a time period.

---

[1] Overseas initially filed an arbitration claim in August 2000, but it was dismissed because a hearing was not scheduled. Overseas refiled, but the claim was dismissed again in January 2007, without prejudice to Overseas pursuing its claim in court.

After receiving several margin calls in 1999, Dr. Elia stated that he contacted Herzog to determine how it calculated margin requirements. The manager of Herzog's margin department described how the minimum maintenance requirement was calculated and explained Herzog's liquidation requirements. Dr. Elia asserted that he had relied upon the manager's explanation, based upon which he calculated that the Overseas account always met the minimum maintenance requirements. And although the market went down on the Friday before Herzog liquidated the account, Dr. Elia attested that it went up on Monday morning, putting Overseas above the margin amount required. Nonetheless, Herzog started liquidating the account soon after the market opened. Dr. Elia provided calculations of the maintenance requirements for the account, showing that it always had a net equity and Herzog was never in danger of losing any money.

In response, Herzog filed an affidavit disputing Dr. Elia's calculations. The trial court granted summary judgment for Herzog and entered a final judgment, which Overseas now appeals.

The standard of appellate review applicable to a grant of summary judgment is de novo. *Volusia Cnty. v. Aberdeen at Ormond Beach, L.P.*, 760 So. 2d 126, 130 (Fla. 2000). Summary judgment is proper only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Id.*

Although Herzog contends that it could liquidate the Overseas account in its sole discretion under the Customer Agreement, this discretion was to be exercised "in accordance with its general polices regarding margin maintenance requirements." These policies were not defined in the agreement. Indeed, Herzog had the right to request additional margin from the customer when the account fell below minimum maintenance requirements; failure to meet a margin call could result in the liquidation. However, Dr. Elia contends, based on the manager's explanation, that the Overseas account was in full compliance with the minimum margin requirements and that a proposed Monday liquidation would not occur if the market opened "up." Herzog disputes his calculations. Without the policies or standards regarding the minimum maintenance requirements, we cannot conclude that there are no remaining issues of material fact.

Included in the breach of contract action is a claim that Herzog breached an implied covenant of good faith and fair dealing. Because Herzog had the discretion to liquidate, without defined standards governing the exercise of that discretion, an implied covenant of good faith arose, which can be breached:

4

Florida's implied covenant of good faith and fair dealing is a gap-filling default rule. It is usually raised when a question is not resolved by the terms of the contract or when one party has the power to make a discretionary decision without defined standards. Where there are no standards for exercising discretion, the implied covenant of good faith protects contracting parties' reasonable commercial expectations. "Unless no reasonable party in the position of [Publix] would have made the same discretionary decision [Publix] made, it seems unlikely that its decision would violate the covenant of good faith . . . ."

*Publix Super Mkts., Inc. v. Wilder Corp. of Del.*, 876 So. 2d 652, 654-55 (Fla. 2d DCA 2004) (citations omitted) (quoting *Sepe v. City of Safety Harbor,* 761 So. 2d 1182, 1185 (Fla. 2d DCA 2000)); *see also Meruelo v. Mark Andrew of Palm Beaches, Ltd.*, 12 So. 3d 247 (Fla. 4th DCA 2009). There are no defined standards for the exercise of discretion in the Customer Agreement. Herzog did not file any affidavits showing what the standards were, whether they were met in this case, or whether liquidation was necessary for its own protection. As there were disputed issues of material fact remaining to be resolved, Herzog failed to establish entitlement to summary judgment.

For these reasons, we reverse the final summary judgment and remand for further proceedings.

TAYLOR and FORST, JJ., concur.

*       *       *

**Not final until disposition of timely filed motion for rehearing.**

5